**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NORTON OUTDOOR ADVERTISING,
INC.,                                                          Case No. 1:20-cv-350

     Plaintiff,

                                               Barrett, J.
       v.                                                 Bowman, M.J.

VILLAGE OF ST. BERNARD, OHIO, et al.,

     Defendants.

## REPORT AND RECOMMENDATION

Defendant Village of St. Bernard, Ohio ("Village") denied and/or revoked permission for Plaintiff Norton Outdoor Advertising, Inc. ("Norton") to erect two digital billboards based upon Village ordinances ("sign codes").  In this lawsuit, Norton seeks a declaratory judgment, injunctive relief, monetary damages and attorney fees under 42 U.S.C. § 1983 relating to that enforcement action.  Currently pending are the parties' cross-motions for summary judgment. (Docs. 37, 38).

The undersigned stayed disposition of the parties' motions in anticipation of the Supreme Court's decision in *City of Austin, Texas v. Reagan Nat'l Advertising of Austin, LLC*, 142 S. Ct. 1464 (April 21, 2022), which addressed closely related issues.  Following that decision, both parties filed supplemental briefs.  Having reviewed extensive briefing on all relevant issues, the undersigned concludes that oral argument would not aid disposition of this case.[1]  For the following reasons, Norton's motion should be DENIED and the Village's motion should be GRANTED.

---

[1]Oral argument was not initially requested by either party, but Norton added a request on May 16, 2022, citing "the complexities of the issues present after supplemental briefing."  (Doc. 50 n.1)

## I.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.  The moving party must support its motion by citations to "particular parts of materials in the record," including but not limited to discovery materials and affidavits.  *See* Rule 56(c). The moving party also has the burden of showing an absence of evidence to support the nonmoving party's case.  *Id*.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   In applying this standard, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  On the record presented, the parties agree on most of the relevant facts.  Where disagreement exists, the undersigned has drawn all reasonable inferences in favor of Norton.[2]

## II.    Findings of Fact

1.     Norton is an Ohio corporation engaged in the outdoor advertising business, including the sale and lease of billboard space.  Norton's billboards are primarily used for commercial advertisements, but at times display non-commercial content.

2.     Norton maintains a total of nine outdoor advertising signs or billboards at seven locations in the Village, including two billboards located at 130 West Ross Avenue.

---

[2]When cross-motions are filed by both parties, the court must apply the relevant standard to each motion, since each party is the "nonmoving party" in opposition.  However, because the undersigned recommends granting the Village's motion,  the undersigned has set forth all relevant facts as construed in Norton's favor.

Norton is also seeking new leasehold interests within the Village upon which to erect additional signs.

3.      The Village requires the issuance of a permit "[b]efore any sign is installed or erected." § 1185.002.

4.      The Village's sign codes are contained within two sections of the Village Code: (1) Part Seven, the Business Regulation Code; and (2) Part Eleven, the Planning and Zoning Code. Relevant to this dispute, the Village distinguishes between signs that advertise or announce content that relates to the same premises on which the sign is located (a/k/a "on-premises signs") and signs that pertain to content located "elsewhere" (a/k/a "off-premises signs").

5.      Both an "outdoor advertising sign" in Chapter 7 and an "advertising sign" in Chapter 11 are defined as off-premises signs. (*See* Doc. 37-1 at 5 and 7; PageID 1439 and 1441, describing the on-/off-premises distinctions drawn by the Village). Chapter 711, entitled "Expressway Advertising," contains provisions that pertain to outdoor advertising signs that do not apply to on-premises signs. Chapter 11 similarly differentiates between "advertising signs" (a/k/a off-premises signs) and "business signs" (a/k/a on-premises signs) based upon whether the sign's message advertises something "on the premises where the sign is located" or "elsewhere". §§1185.001(c) and (d).

6.      In general, the Village more strictly limits off-premises signs. Critically here, the Village prohibits all changeable messaging (which the Village calls multiple message or variable message displays) on off-premises signs, but does not prohibit changeable messaging for on-premises signs. *See* §711.07(e) ("Multiple message or variable message outdoor advertising signs are not permitted.").

7.      Norton applied for and received a permit for replacement of a static billboard and/or for reconstruction of a new sign in the Village, to be located at 130 West Ross Avenue.  The permit application identified the replacement sign(s) as "LED" but did not otherwise indicate that the new digital billboards would display changeable or variable messages.  (Doc. 32, Stoker Depo. at 231, 235, 249).

8.      The Village subcontracts its zoning function to Defendant Gerald Stoker. (Doc. 31, Depo. at 8-10).

9.      After Norton erected the new billboards, the Village revoked the permits. (Doc. 38 at 5, noting that permits "were revoked after construction."). On March 22, 2018, Building Commissioner Stoker issued a Notice of Non-Compliance.  (Doc. 38-3; Doc. 32, Exh. 12 at 435-436, PageID 1089-90;).  The March 2018 Notice states that the previously issued permit was for an "LED sign," but points out that Norton failed to identify the new sign as a "Multiple Message Advertising Device & Variable Message Sign, for which an approval… was never granted and is prohibited per…section 711.07(e)."  *Id.* at 435.  The letter concludes with a request that Plaintiff "deactivate the multiple message advertising and variable message component of the sign…and ensure that it remains deactivated until such time that a variance has been granted by the Village…." (*Id.*)

10.      Norton does not dispute that the West Ross Avenue signs fall within the definition of "Multiple Message Advertising Device" and/or "Variable Message Sign" and therefore violate § 711.07(e). (Doc. 36 at 83-84). Both billboards allow Norton to display messages that change every 8 seconds.

11.      Norton appealed the Village's "attempted revocation" of the permits to the Board of Zoning Appeals. (Doc. 1 at ¶ 81).  After receiving an adverse decision before

that body, Plaintiff further appealed in state court. That case remains pending. *See Norton Outdoor Advertising, Inc. v. Board of Zoning Appeals, Village of St. Bernard, et al.*, Hamilton County Court of Common Pleas Case No. A1900066.

12.    Norton initiated this federal lawsuit to challenge the constitutionality of the Village sign codes under the First and Fourteenth Amendments.

### III.    Analysis

### A.  A Change in Controlling Case Law Applies to the Village's Prohibition of Digital Variable Message Displays for Off-Premises Signs

At the heart of this dispute is Norton's desire to erect variable message digital off-premises signs,[3] both at the current West Ross Avenue location and elsewhere in the Village. All of Norton's billboards are off-premises signs.

Like most things in the world, billboards have evolved over time. Once painted or pasted, billboards now are comprised of materials ranging from "magazine quality vinyl wraps… to remote control digital displays." (Complaint at ¶ 41). Technological advances allow digital billboard displays to be changed with dazzling speed and frequency. But the Village strictly prohibits use of this variable messaging technology for all off-premises signs. By contrast, state law allows billboard owners and operators to use the technology so long as the billboard images are not changed more frequently than every 8 seconds.[4] Norton seeks a ruling that would require the Village to allow it the same leeway.

---

[3]For the Court's convenience, the undersigned refers to both "advertising signs" and "outdoor advertising signs" as "off-premises signs" for the remainder of this Report and Recommendation. Although Plaintiff uses the phrase "digital signs" throughout its pleading and briefing, the undersigned uses the alternative phrase "variable message signs" to more accurately describe the changeable nature of the digital billboards that are at issue. In so doing, the undersigned acknowledges testimony by Norton's representative that all LED digital signs are intended to be used as variable message signs because it would be cost-prohibitive to display only a static LED image.

[4]The State of Ohio "heavily regulates billboards" *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 689 (6th Cir. 2022). Unlike the Village, Ohio allows variable message off-premises digital billboards so long as

In its motion for summary judgment, Norton chiefly argues that the Village's prohibition of variable message displays for off-premises signs - but not for on-premises signs - is a content-based regulation.   Building on that premise, Norton maintains that the Village must justify its regulation under a "strict scrutiny" standard of review.  If that standard applies, the Village's regulation likely is unconstitutional.  *See generally*, *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163 (2015) ("Content-based laws - those that target speech based on its communicative content - are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.") (additional citations omitted).   By contrast, the Village's counter-motion for summary judgment argues that the on-/off-premises distinction is subject only to an "intermediate scrutiny" standard of review.

At the time the parties filed their cross-motions, controlling Sixth Circuit law favored Norton.  The Supreme Court has historically upheld *some* regulation of billboards, observing that "whatever its communicative function, the billboard remains a "large, immobile, and permanent structure which …is designed to stand out and … creates a unique set of problems for land-use planning and development*." Metromedia, Inc. v. City of San Diego*, 101 S.Ct. 2882, 2889–90, 453 U.S. 490, 502 (1981).  However, in *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019), the Sixth Circuit interpreted the Supreme Court's 2015 *Reed* decision as supporting its holding that on-/off-premises distinctions in sign codes are not content neutral and therefore are subject to strict scrutiny.  *Thomas v. Bright* reasoned that a Tennessee regulation was content-based because it required a state official to read the sign's content to determine whether the display pertained to the real

---

the images are displayed for no less than 8 seconds.  *See generally*, Ohio R.C. Chapter 5516, O.A.C. § 5501:1.

property on which the billboard was located.[5]  Norton's motion for summary judgment heavily relies upon *Thomas v. Bright* and its progeny. *See e.g., L.D. Mgmt. Co. v. Gray*, 988 F.3d 836 (6th Cir. 2021) (holding that Kentucky law that differentiated between billboards advertising off-site activities and those advertising on-site activities was content-based and subject to strict scrutiny).

Unfortunately for Norton, the reasoning of *Thomas v. Bright* was recently rejected by the Supreme Court in *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S.Ct. 1464 (2022).  In *City of Austin*, a billboard company challenged a similar on-/off-premises sign code on First Amendment grounds.  The Fifth Circuit had explicitly adopted the Sixth Circuit's reasoning in *Thomas v. Bright*, holding that the on-/off-premises distinction was subject to strict scrutiny.  The Supreme Court reversed, squarely rejecting the expansive interpretation of *Reed* adopted by both circuits.  Thus, on the central question presented here - whether on/off-premises regulations should be subject to strict scrutiny as Norton maintains or should be considered to be content-neutral and subject only to intermediate scrutiny - controlling Supreme Court case law now supports the Village.

> Like thousands of jurisdictions around the country, the City of Austin… regulates signs that advertise things that are not located on the same premises as the sign, as well as signs that direct people to offsite locations. These are known as off-premises signs, and they include, most notably, billboards.  The question presented is whether, under this Court's precedents interpreting the Free Speech Clause of the First Amendment, the City's regulation is subject to strict scrutiny.  We hold that it is not."

*City of Austin,* 142 S.Ct. at 1468-69.

---

[5]In *Thomas v. Bright*, the billboard at issue displayed noncommercial speech on a vacant lot.

As many federal courts pointed out prior to *City of Austin*, *see Thomas v. Bright*, 937 F.3d at 724-725, on-/off-premises sign code distinctions flourished after the enactment of the federal Highway Beautification Act of 1965, 23 U.S.C. § 131, in which Congress strongly encouraged the regulation of billboards located near highways. Recounting that same history, *City of Austin* noted that outdoor advertising has been regulated for more than 100 years, *see id.*, 142 S. Ct. at 1469, 1474-76, but that on-/off-premises distinctions particularly increased after the enactment of that federal Act:

> In the Act, Congress directed States receiving federal highway funding to regulate outdoor signs in proximity to federal highways, in part by limiting off-premises signs. See §§ 131(b)-(c) (allowing exceptions for "signs, displays, and devices advertising the sale or lease of property upon which they are located" and "signs, displays, and devices ... advertising activities conducted on the property on which they are located"). Under the Act, approximately two-thirds of States have implemented similar on-/off-premises distinctions…. The City represents, and respondents have not disputed, that "tens of thousands of municipalities nationwide" have adopted analogous on-/off-premises distinctions in their sign codes.

*Id.*, 142 S.Ct. at 1469.

Consistent with the on-/off-premises distinction at issue in this case, Austin's sign codes allowed pre-existing on-premises signs to be converted to changeable digital signs, but barred pre-existing off-premises signs from being converted.[6]  Austin's sign codes also barred the erection of any and all <u>new</u> off-premises signs, whether digital or not. After review of its precedents, the Supreme Court concluded that the on/off-premises distinction is best described as a content-neutral "location-based regulation" that is "similar to ordinary time, place, or manner restrictions."  *Id.*, 142 S.Ct. at 1473.  The Court

---

[6]The sign codes at issue in *City of Austin* did not distinguish between variable message digital signs and static image digital displays.  However, like the Village in defining "advertising signs," Austin defined the term "off-premises sign" to mean "a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed, or that directs persons to any location not on that site."  *Id.* at  1469.

explained that the "off-premises distinction requires an examination of speech only in service of drawing neutral, location-based lines" and therefore "is agnostic as to content" in the absence of any evidence of "a content-based purpose or justification." *Id*., 142 S.Ct. at 1471.

In addition to arguing that the on-/off-premises distinction is subject to strict scrutiny under now abrogated Sixth Circuit case law, Norton's motion for summary judgment argues that the Village's prohibition on variable message signs is facially overbroad because it applies equally to both commercial speech and any non-commercial speech that Norton wishes to display.  (Doc. 37-1 at 19-20).  But that argument is also foreclosed by *City of Austin*.  Austin's sign code prohibited *all* new off-premises digital content, including non-commercial content.  The fact that the regulation could bar some non-commercial content was irrelevant because the off-premises prohibition was content-neutral.

### B.  Post-*City of Austin* Arguments and Standing Issues

Both parties filed supplemental briefs in the wake of *City of Austin*.  In its supplemental brief, Norton insists that *City of Austin* is not dispositive of *all* issues presented.  The Village argues otherwise.

The undersigned finds *City of Austin* to be dispositive of most issues, and concludes that Norton's lack of standing precludes claims not foreclosed by *City of Austin*. For example, in addition to its challenge to the ban on off-premises variable message signs in § 711.07(e), Norton presents multiple facial challenges to other sign code provisions, alleging they are overly vague or overbroad, and/or act as an unconstitutional prior restraint on protected speech.  However, in order to pursue those challenges, Norton

9

must allege an injury in fact under *each* challenged provision of the Village sign code.  But Norton makes this essential showing only with respect to § 711.07(e).

### 1.   The Provisions for Which Norton has Standing to Sue

Because Norton's injury arose directly from the Village's enforcement of §711.07(e), Norton has standing to challenge that provision, along with closely related provisions defining "outdoor advertising sign" or similar terms.

### a.   The Definition of "Outdoor Advertising Sign"

Norton admits that "outdoor advertising sign" means an off-premises sign. However, it maintains that the definition contained in § 711.02(a) includes content-based exclusions that distinguish this case from *City of Austin* and require this Court to apply strict scrutiny.  The definition starts out by broadly defining an "outdoor advertising sign" as any sign (including a billboard) "used to advertise or to give information in the nature of advertising" that is "visible from the main traveled way of the highway on the Interstate system or primary system in this Village." *Id.*   However, subsections of §711.02(a) substantially narrow the category of "outdoor advertising sign" through exclusionary language.

First, § 711.02(a)(1) excludes advertising signs that are "primarily intended" to advertise things "on the same premises" and not "primarily intended to promote sale off premises." While the adverb "primarily" suggests a cursory level of evaluation, it is not qualitatively different than the evaluation of whether a sign advertises something "on-premises" or "off-premises."   The Supreme Court has recognized that some degree of official discretion is constitutionally permissible. *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) ("[P]erfect clarity and precise guidance have never been required even

10

of regulations that restrict expressive activity."). And nothing in the record suggests that this common adverb is overly vague or has been unreasonably applied. In other words, in its ordinary meaning and in context, §711.02(a)(1) merely clarifies that only *off-premises* signs and not *on-premises* signs are encompassed within the ban on variable messaging listed in § 711.07(e).

The language of § 711.02(a)(3) similarly excludes from the definition of an outdoor advertising sign those signs that advertise the "property *on which they are located*." (emphasis added). But real estate signs that advertise the property on which they are located are a subcategory of *on-premises signs.* Because the broader category of on-premises signs are already excluded from the definition of an outdoor advertising sign, the exclusion of the real estate sign subcategory in § 711.02(a)(3) is redundant and does not transform the location-based, on-/off-premises definition into a content-based one.

The remaining two exclusions provided by § 711.02(a)(2) and (a)(4) are equally innocuous and also fail to impact the content-neutrality of the Village's on-/off-premises distinction. With some mystery as to its necessity, §711.02(a)(2) states that "directional or traffic control signs posted by a public authority" should not be considered "outdoor advertising signs". Even assuming that some traffic signs might be considered "off-premises" if they do not relate to the property on which they are posted,[7] it is difficult to fathom how they could be construed as "used to advertise or to give information in the nature of advertising" something off-premises.[8] But even if a traffic sign could be

---

[7]One might assume that many, if not most, traffic signs (i.e., stop signs) would be "on-premises signs" so long as they relate to the area of roadway on which they are located.
[8]The fact that the provision for a "directional sign" is limited to that posted by "a public authority" distinguishes this case from *Reed*, in which a *church* sought to post signs directing traffic to weekly services. In *Reed*, the sign codes contained different requirements based upon categories of *private noncommercial* speech, treating the church's temporary directional signs less favorably than ideological or political signs. *Reed* did not overrule precedent that draws a distinction between governmental speech and private speech.

construed as a public authority's "advertisement" for something off-premises, it is permissible for a government to create an exclusion for government communications under such circumstances without inviting strict scrutiny. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467-69 (2009) ("Directional or other official signs or notices erected and maintained by public officers or agencies… for the purpose of carrying out an official duty or responsibility" are forms of government speech, and an exemption for them does not trigger strict scrutiny.").

With respect to the exclusion in § 711.02(a)(4), if a public service sign presents "information such as time or weather" and unequivocally is "*not used to advertise or promote*," then it cannot be an outdoor "advertising" sign.[9] To the extent that Norton objects to the regulation of only signs that "advertise," *City of Austin* confirms that a regulation that targets off-premises commercial speech [10] remains subject to an intermediate scrutiny standard of review. *See, e.g.*, *City of Austin*, 142 S. Ct. at 1474 (discussing the majority holding in *Metromedia,* 453 U.S. at 503-512); *see also Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 689 (6th Cir. 2022) (suggesting that prior restraint doctrine does not apply to commercial speech).

---

*See Pleasant Grove City*, 555 U.S. at 467-69; *see also Reed*, 576 U.S. at 175 (Alito, J., stating in concurrence that governmental entities "may put up all manner of signs to promote safety, as well as directional signs and signs pointing out historic sites and scenic spots.").

[9]The undersigned rejects Norton's assertion that the definition of a "public service" sign is overly vague merely because Mr. Stoker struggled with its definition. The definition gives explicit and narrow examples and specifically excludes all advertising signs.

[10]There is no universally accepted definition for "commercial speech," though it has been described as "'[e]xpression related solely to the economic interests of the speaker and its audience.'" *Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Prof'l Eng'rs & Surveyors*, 916 F.3d 483, 487 n.2 (5th Cir. 2019) (alteration in original) (quoting *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*,, 447 U.S. 557, 561, 100 S.Ct. 2343 (1980)). As the Supreme Court noted in *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993), "[t]here is no doubt a 'commonsense' basis for distinguishing between the two [commercial and noncommercial speech], but under both the city's code and our cases the difference is a matter of degree."

### b.  Related Terms and Phrases that Impact Norton

The Village initially authorized Norton's billboards as advertising signs.  Like the phrase "outdoor advertising sign" in Chapter 7, the definition of "advertising sign" in §1185.001(c) is limited to off-premises signs.  However, rather than using the adverb "primarily" to modify the on- and off-premises distinctions as it does in § 711.02(a)(1), § 1185.001 defines an advertising sign as that "which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than on the premises where displayed *or only incidentally on the premises*." *Id.* (emphasis added). In its complaint,[11] Norton objects to the word "incidentally" as overly vague and subjective. However, assuming that Norton has standing to challenge this related definition, the undersigned finds it to be sufficiently clear so as to not be void for vagueness or to invite strict scrutiny.  Like the use of the adverb "primarily" in § 711.02, "incidentally" is a word of ordinary meaning and common understanding.  Its inclusion in the Village's definition does not transform the on-/off-premises distinction into a content-based one.

Norton attacks with equal vigor on vagueness grounds the Village's use of "multiple undefined terms" in Chapter 711 and elsewhere in the sign codes that require "a subjective personal opinion, the exercise of judgment, or the performance of a subjective or ad hoc determination." (Doc. 1 at ¶ 125).  In Chapter 711, Norton points to phrases such as "Expressway Advertising," "Multiple Message Outdoor Advertising Signs" and "Variable Message Outdoor Advertising Signs." (*Id.*; see also Doc. 37-1 at 6, PageID 1440).  While the phrases  "Multiple Message Advertising Device" and "Variable Message

---

[11]In its briefing on summary judgment, Norton does not discuss every allegation in its complaint. (*See generally*, Doc. 1 at ¶¶122-125).  However, Norton continues to argue that many sign code provisions are unconstitutionally vague and/or overbroad.

13

Sign" are clearly defined in §§ 711.02(l) and (m), Norton implausibly suggests that minor variations in the wording of §711.07(e) to prohibit "[m]ultiple message or variable message outdoor advertising signs" might somehow convey something different. (Doc. 1 at ¶72). Such parsing of language in an effort to obfuscate ordinary meanings is unpersuasive.

Norton's complaint that the Village has not defined the heading "Expressway Advertising" is equally unpersuasive. Within Chapter 7, the Village has defined "Highway" and "Interstate" in order to clarify the portions of its roadways that are covered. *See* §§711.02(i) and (j). The phrase "Expressway Advertising" both on its own and in context is of such common usage and understanding that there can be no mistake in meaning. *See also*, *generally Village of Hoffman Estates, v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982). (rejecting facial challenge to wording of ordinance regulating the sale of drug paraphernalia). In sum, the undersigned concludes none of the provisions from which Norton claims actual injury distinguish this case from *City of Austin* and require this Court to apply strict scrutiny to the Village's otherwise content-neutral ban on variable message displays for off-premises signs.

## 2. Norton's Lack of Standing to Challenge Provisions Unrelated to the Ban on Variable-Message Off-Premises Signs

Unlike its challenge to § 711.07(e), Norton's challenges to multiple unrelated provisions fail for lack of standing. Standing remains a threshold jurisdictional issue. And as the party invoking federal jurisdiction, it is Plaintiff's burden to demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016). In *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007), the Sixth Circuit held that a billboard company's standing to file suit based upon an injury-in-fact with regard to one provision

14

of the City's sign code "does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions." *Id*., 485 F.3d at 350. The court specifically held that an advertising company whose application to erect a billboard was rejected based on size limitations lacked standing to challenge unrelated permitting provisions, including: "lack of procedural safeguards in the approval process, the potential for content based restriction of non-commercial speech, the favoring of commercial over non-commercial speech, the favoring of some commercial topics over others…[and] an equal protection challenge …." *Id*., 485 F.3d at 347 n.1. The plaintiff's problem was that it could show no "*independent* injury in fact" from those provisions. *Id*. at 348 (emphasis original).[12] "The critical inquiry is whether the plaintiff can allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code." *Id.* at 351. *Accord Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 464 (6th Cir. 2007) ("Although there is broad latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions.") (internal marks and citation omitted).

### a. General Permitting Structure

Like the plaintiff in *Prime Media*, Norton attempts to broadly challenge the entire permitting structure as unconstitutional. Norton charges that the Village's permitting structure contains: (1) an allegedly insufficiently defined time frame for permitting

---

[12]The appellate court found relevant that the defendant City had amended its sign code to remove any permitting requirements after suit was filed. However, standing is determined *at the time suit is filed*. And the court affirmed the trial court's decision that the plaintiff could show no independent injury from any provision but for the size restrictions relied upon by the City to deny the permit.

decisions; and (2) allegedly content-based subject categories of speech that are excluded from permitting requirements.  In its reply brief, Norton adds a third argument that the Village's  variance provision is facially unconstitutional. (Doc. 43 at 5, PageID 1626, citing *International Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 702 (6th Cir.  2020)). In addition to Norton's lack of standing, Norton failed to reference the variance provision in its complaint; therefore, the undersigned declines to consider Norton's challenge to the variance provision.

Returning to the first two challenges to the permitting structure that are included in its complaint, Norton does not claim any injury from the timing of the Village's issuance of permits.  Instead, Norton asserts on summary judgment that Chapter 11 theoretically "fails to provide a time within which to act on applications and does not contain narrow, objective, and definite standards."  (Doc. 37-1 at 13, PageID 1447).  But Norton does not have standing to present a hypothetical injury. *See Norton Outdoor Advertising, Inc. v. Pierce Township*, 2007 WL 1577747, at *7 (S.D. Ohio May 30, 2007) (while township theoretically could have delayed decision on permit application, "it did not do so in this case, and the Court declines to address a hypothetical constitutional violation."). In any event, the Village points out in its response that § 1125.05 states that a Zoning Inspector "shall" act upon a Zoning Ordinance application "within thirty days after they are filed in full compliance with all the applicable requirements."   And §1131.05 states that for a Board of Zoning Appeals permit, an application "shall be filed with the Zoning Inspector who shall transmit the same to the board." (Doc. 39 at 9, PageID 1513, quoting ordinances). Therefore, even if Norton could claim some injury-in-fact, its facial challenge is without merit.

Norton also objects to the Village's definition of what signs are subject to permitting. The Village requires permits for a "sign," but excludes multiple noncommercial categories of speech from permit requirements in defining the word "sign." *See* §1185.001(a). Plaintiff therefore alleges that the exclusions to the permit regulations are content-based and subjective, like those at issue in *Reed*.[13] "If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Forsyth Cty., Ga. v. Natitonalist Movement*, 505 U.S. 123, 131 (1992) (internal quotations and citations omitted). In contrast to Norton's view, however, the Village argues that the "sign" definition does nothing more than clarify that permits are required only for those signs displaying commercial speech.[14] (Doc. 38 at 10, 13, PageID 1465,1468).

The undersigned finds no need to reach this issue because Norton lacks standing to challenge the Village's definition of a "sign" or related standards. On the record

---

[13]The plaintiff in *Reed* sought to post a sign containing noncommercial speech He sustained an injury-in-fact because the Town of Gilbert imposed different and more stringent requirements on his category of non-commercial speech than it did on other categories of noncommercial speech.

[14]A "sign" is defined as much by what is excluded as by what is included. *See* § 1185.001(a). After broadly defining "sign," the definition first excludes "the flag, pennant, or insignia of any… political unit." The next part of the exclusion requires interpretation. Suggesting one possible construction, the Village suggests that it excludes signs that (a) have the flag, pennant or insignia of a political unit; or (b) [have the flag, pennant or insignia] of any "political, educational, charitable, philanthropic, civic, professional, religious or like campaign, drive, movement or event," (Doc. 39 at 15, PageID 1519). Under that interpretation, the Village argues that the definition regulates only the "type of sign" (i.e., a flag, a pennant, or an insignia-based sign). *Id.*. But that seems at odds with the listing of a "flag" within the broad inclusionary part of the definition.

Norton suggests (and the Village at times seems to agree) that the exclusion instead should be interpreted as meaning that no permit is required for: (1) the flag, pennant, or insignia of any… political unit; **or** (2) an otherwise qualifying sign that is used "to announce, direct attention to, or advertise" any: (a) political campaign, drive, movement or event, (b) educational campaign, drive, movement or event, (c) charitable campaign, drive, movement or event, (c) philanthropic campaign, drive, movement or event, or (d) civic, professional, religious or like campaign, drive, movement or event.

presented, Norton seeks only the right to install variable message digital billboards that clearly fall within the definition of a "sign."  For purposes of standing, the key fact is that § 711.07(e) prohibits variable messaging on all off-premises advertising signs.  The Village has consistently maintained that Norton may not obtain a permit to erect or install its digital billboards under § 711.07(e).  The Village has never denied or revoked Norton's permits or issued a Notice of Compliance for any other reason, and has not threatened any other type of restraint on Norton's speech.  Because § 711.07(e) is a content-neutral on-/off-premises provision that provides an independent ground for rejecting Norton's permit applications, Norton does not have standing to challenge unrelated provisions. *See, e.g., Midwest Media Prop.,* 503 F.3d at 461-62; *Prime Media*, 485 F.3d at 352-54.

Contrary to that settled case law, Norton urges this Court to find standing under *Int'l Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 702 (6th Cir. 2020), a split decision in which the majority held that the plaintiff had standing to challenge a variance provision as impermissibly vague, along with related content-based permitting provisions. Even though the plaintiff's signs had been rejected based upon content-neutral size provisions, the court distinguished *Midwest Media* and *Prime Media*: based in part on the fact that the plaintiff in *City of Troy* had applied for and been refused a variance, and specifically challenged the variance provision *after* that denial.  The majority reasoned:

> [T]he variance provision of the City of Troy Sign Ordinance … is not independent from other provisions of the ordinance, but rather inextricably linked to them by providing a way of relaxing the very restrictions imposed by the Sign Ordinance. It would amount to circular logic to say that International Outdoor lacks standing to challenge the ordinance because it challenges the very provision that gives it standing to challenge the ordinance. Such an approach would render the constitutionality of most variance provisions unreviewable.

18

*City of Troy*, 974 F.3d at 702.  The majority then considered the variance provisions in tandem with permit requirements that required permits for commercial speech while excluding non-commercial speech from permitting requirements.  The court expressed disagreement with other circuits that had found that, even after *Reed*, intermediate scrutiny standard continued to apply to commercial speech regulations under *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 563, 100 S.Ct. 2343 (1980).  Instead, relying upon the expansive interpretation of *Reed* adopted in *Thomas v. Bright*, *City of Troy* held that regulations that distinguished between commercial and noncommercial speech were subject to strict scrutiny.

*City of Troy* is easily distinguished.  Norton does not allege it applied for and was denied a variance in this case, and did not challenge the variance provision in its complaint.  For that reason alone, *Midwest Media* and *Prime Media* remain the controlling authority on the standing issue presented.  Even if standing existed, however, *City of Austin* casts doubt on the continuing viability of the majority's rejection of the intermediate scrutiny standard for commercial speech.  See *City of Austin*, 142 S. Ct. at 1474 (reaffirming that regulations that target off-premises commercial speech remain subject to only an intermediate scrutiny standard of review).

### b.  Temporary Signs

For similar reasons, Norton lacks standing to challenge the Village's permit provision for "temporary signs" as unconstitutionally vague and giving "unbridled discretion" to enforcement officials.  (Doc. 37-1 at 8, PageID 1442).  Under Chapter 11, §1185.06 states that "Temporary Signs" "for special purpose or events may be permitted for a period of time by permit only, at the discretion of the code Assistance Officer."  But

Norton seeks to erect permanent billboards and has never sought to erect a temporary sign for a special purposes or event.[15] And again, Norton's variable message off-premises signs are strictly prohibited under § 711.07(e).

### C. The Challenged Sign Code Satisfies the Intermediate Scrutiny Standard

Having determined the limited scope of this Court's jurisdiction to review the content-neutral sign code provisions that Norton has standing to challenge, the undersigned turns next to the issue of whether the Village has satisfied its burden to prove the constitutionality of those provisions.[16] In *Central Hudson*, the Supreme Court set out a four-part test for determining whether an ordinance regulating commercial speech survives intermediate scrutiny. Under the *Central Hudson* test,[17] this Court must determine if § 711.07(e) "seeks to implement a substantial governmental interest,… directly advances that interest, and [] reaches no further than necessary to accomplish the given objective." *Metromedia, Inc. v. City of San Diego*, 101 S.Ct. at 2892, 453 U.S. at 507 (quoting *Central Hudson*, 447 U.S. at 563-566). In *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 818 (6th Cir. 2005), the Sixth Circuit applied a similar test, holding that content-neutral time, place and manner restrictions on speech such as

---

[15]The Village's provision for temporary sign permits differs from the *City of Troy* case in which temporary signs were exempt from all permit requirements. *See City of Troy, Michigan*, 974 F.3d at 702. As discussed, *City of Troy* distinguished other Sixth Circuit cases that the undersigned finds to be controlling here. After distinguishing those cases, the majority reasoned that the plaintiff had suffered an injury-in-fact (the payment of a permit fee) since those erecting temporary signs were exempt from such fees. *Id.*, at 702 n.1.
[16]*City of Austin* did not reach the issue of whether Austin's sign code could withstand intermediate scrutiny. Although the district court had found in favor of the City on that issue, the Supreme Court declined to review it on appeal of the Fifth Circuit's decision, because that court had not addressed it.
[17]The first part of the *Central Hudson* test – a determination of whether the regulated speech is lawful commercial speech entitled to First Amendment protection – is not at issue in this case.

size restrictions on billboards are valid if they are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication.[18]

Norton argues that the evidence submitted by the Village is insufficient to carry its burden of proof on any of these prongs. The Village's evidence primarily consists of the statement of intent for the regulation, which Norton argues is mere speculation or conjecture. Thus, even if this Court concludes (as the undersigned has) that (1) only intermediate scrutiny applies; and (2) Norton lacks standing to challenge most sign code provisions, Norton argues that it still wins on summary judgment under intermediate scrutiny review. The undersigned disagrees. Because closely related billboard regulations have been upheld as satisfying intermediate scrutiny based upon similar statements of intent, and based on settled and controlling case law, the Village is entitled to judgment on the record presented.

The record contains ample statements of intent concerning the Village's enactment of "Expressway Advertising" provisions in Chapter 711 more than twenty years ago. The statements clearly articulate the Village's focus on safety and esthetics. Regarding traffic safety, the Village states that the provisions are designed to: "[p]rotect the safety and general welfare of the public who travel Interstate 75 within [the Village] by reducing the distractions to motorists and thus reducing traffic and safety hazards," to "[p]rotect the safety and general welfare of the public by decreasing the excessive number of accidents, injuries, and deaths occurring on the Interstate system and primary highway within the

---

[18]"As a practical matter, the choice of whether to apply the intermediate scrutiny test set forth in Central Hudson or the "time, place, manner" test "makes little difference here: the two tests impose similarly demanding levels of 'intermediate scrutiny.'" *Hucul Advertising, LLC v. Charter Tp. of Gaines*, 748 F.3d 273, 276 (6th Cir. 2014) quoting *Bench Billboard Co. v. City of Covington*, 465 Fed. Appx. 395, 404 (6th Cir.2012)).

Village," and to "[r]educe the risk of injury to the St. Bernard police and fire department personnel responding to traffic accidents." §711.01(a), (b), and (c).  Regarding esthetics, the regulations are designed to "[i]mprove the housing and residential property within [the Village] while increasing property values and increasing the interest of individuals to live within [the Village] by regulating outdoor advertising signs [off-premises signs] which are visible from residential properties" and to "[r]educe the potential for visual blight, both in residential as well as industrial properties." § 711.01(d) and (e). There is nothing in the record to suggest that the enactment of § 711.07(e) or its enforcement is based on any purpose other than the Village's publicly stated concerns.

Notwithstanding the codified statements of intent and purpose, Norton complains that the Village "produced no evidence whatsoever during discovery as to its asserted interests." It maintains that the statements of intent at the time of enactment are insufficient as a matter of law. (Doc. 50 at 15, PageID 1705; *see also id.* at 13, PageID 1703).  Contrary to Norton's position, however, the Village's codified statements are evidence of "substantial governmental interests" as a matter of law.  *See Metromedia*, 453 U.S. at 507-508; *accord Hucul Advertising, LLC v. Charter Tp. of Gaines*, 748 F.3d 273, 277-78 (6th Cir, 2014) (discussing stated goals in township's enactment of billboard spacing regulation); *Prime Media*, 398 F.3d at 819.

Norton next challenges the Village's argument that its ban on off-premises variable message billboards actually advances those legitimate traffic and safety interests.  Norton maintains that the Village should not be allowed to rely solely upon the stated goals of the legislation, but should be required to produce *additional* evidence that a variable message off-premises billboard is less esthetically pleasing, or more of a traffic

distraction, than is a variable message on-premises sign or other display.  (Doc. 50 at 12, PageID 1702).   Norton disputes the testimony of the Village's representative that its billboards "flash" and/or are disruptive to local residents, and is dismissive of the Village's traffic safety concerns.[19]   But Norton's differing judgments on these issues does not preclude summary judgment on whether §711.07(e) relates to and advances the *Village's* esthetic and traffic goals.  Nor does the undersigned agree with Norton that the Village is required to conduct independent studies or put forth some other evidence of the relationship between § 711.07(e) and the goals it so clearly expressed in Chapter 711.

In *Metromedia*, the Supreme Court was faced with a "meager record," *see id*., 453 U.S.at 508, but nevertheless held that the City of San Diego had sufficiently demonstrated through its "legislative judgment" that its prohibition of off-premises commercial billboards advanced the City's stated traffic and esthetic goals.  The *Metromedia* Court upheld that judgment as reasonable and well-supported by the overwhelming historical record of similar billboard regulations based upon the same goals. "We …hesitate to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety." *Metromedia*, 101 S.Ct. at 2893, 453 U.S. at 509; *see also id* at 508 (holding that "an ordinance which eliminates billboards designed to be viewed from streets and highways reasonably relates to traffic safety.").   *Metromedia* held that the billboard regulation advanced the City's esthetic concerns for the same reasons. "It is not speculative to

---

[19]Norton acknowledges that in separate state court litigation, a resident alleges that the light from West Ross Avenue billboards constitutes a nuisance.  (*See* Doc. 42 at 6, PageID 1591).  *See also City of Austin*, 142 S.Ct. at 1479 (Breyer, J., acknowledging amici references to studies that suggest that variable message digital displays increases crash rates and that on-premises signs are less likely to cause accidents) (internal citations omitted).

recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm.'" *Metromedia*, 101 S.Ct. at 2893-94 and n.16, 453 U.S. at 510 and n.16 (discussing the Highway Beautification Act and similar off-premises regulations by multiple jurisdictions).

Norton does not attempt to distinguish - or even acknowledge -  the holdings of *Metromedia*, *Prime Media* and other cases that have sustained off-premises billboard regulations under intermediate scrutiny.  Instead, Norton relies on *Pagan v. Fruchey*, 492 F.3d 766 (6th Cir. 2007) (en banc), a case that involved judicial review of a local law prohibiting "for sale" signs displayed on vehicles parked on a public street. *Id.* at 772-73. While the city in that case claimed that its ordinance furthered esthetic and safety goals, the Sixth Circuit rejected as "simple conjecture" the only evidence offered in support - the police chief's entirely conclusory affidavit.  *Id*. at 773.  Norton points out that *Pagan* declined to adopt a standard of "obviousness" or "commonsense." *See id.* at 774 (holding that the city needed to produce "*some* evidence to establish that a speech regulation addresses actual harms with some basis in fact.") (emphasis in original).

But the ordinance at issue in *Pagan* prohibited specific content of a commercial message - "For Sale" signs on cars – rather than barring use of a neutral medium (variable messaging signs or billboards) in a content-neutral location-based manner.  And, despite rejecting the "obviousness" standard as insufficient as applied to the speech medium of "For Sale" signs, the Sixth Circuit acknowledged that *Metromedia* used "the collective judgment of many legislative and judicial decisionmakers" as a reliable "substitute" to satisfy the City's evidentiary burden under *Central Hudson* for the entirely different medium of billboard speech. *Pagan*, 492 F.3d at 775; *see also Bench Billboard Co. v. City*

*of Toledo*, 499 Fed. Appx. 538, 545 (6th Cir. 2012) (distinguishing *Pagan* and holding that the city had satisfied intermediate scrutiny under *Metromedia*).

Having determined that the Village has demonstrated that it has substantial governmental interests in traffic and safety that are furthered by the challenged regulation, the only remaining issue is whether § 711.07(e) is narrowly tailored. Norton questions the Village's decision to bar all variable message off-premises signs, rather than following Ohio's lead and merely restricting how often its digital displays may be changed. "Why are the ODOT regulations insufficient to meet the Village's interests? Why does the adjacent City of Cincinnati not need to enact such restrictions?" (Doc. 42 at 17, PageID 1602). But as an independent governing body, the Village is free to enact sign codes that advance the Village's unique interests.[20] "The fact that different townships may exercise their discretion differently and reach different judgments does not render the restrictions imposed by any one township unreasonable and not 'narrowly tailored' to a township's goals." *Hucul Advertising, LLC v. Charter Tp. of Gaines*, 748 F.3d 273, 279 (6th Cir, 2014); *see also Hilton v. Toledo*,. 62 Ohio St.2d 394, 405 N.E.2d 1047 (1980) ("The authority of a municipality to regulate the use of outdoor advertising through its police powers is well settled." )(citations omitted).

> As the Supreme Court has explained, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward,* 491 U.S. at 800, 109 S.Ct. 2746. Rather, we only require "a reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *Prime Media,* 398 F.3d at 822 (citations and internal alteration and quotation marks omitted).

---

[20]The existence of similar restrictions on off-premises billboards (the 8-second limit) under both Ohio and federal law underscores the considered judgment of multiple governmental entities that variable message off-premises digital billboards evoke greater concern for traffic safety than do static image signs.

*Hucul Advertising*, 748 F.3d at 278. In other words, the Village is not required to prove that § 711.07(e) is the least speech-restrictive option that exists to further its esthetic and safety goals.  Rather, it is only required to establish that §711.07(e) is a reasonable "fit" that is narrowly tailored to achieve the Village's substantial interests in traffic safety and esthetics.

Unlike the complete ban on *all* commercial off-premises billboards upheld in *Metromedia*, the Village here bans *only* variable message off-premises signs.  Regardless of Norton's own view of the esthetic appeal of its digital signs, it cannot deny the objective truth that an ever-changing digital display is *different* than a static display.    The challenged provision is tailored to reflect the Village's reasonable judgment that the different esthetic and safety "harm" caused by variable message off-premises billboards should be minimized or eliminated.  Thus, just as reasonable size or spacing regulations for digital billboard displays have been found to be narrowly tailored under the intermediate scrutiny standard, here the Village's ban on variable message off-premises signs is narrowly tailored to address a particular type of sign that it has adjudged to be more esthetically objectionable and at greater risk to traffic than other types of signs.

Last, the Village must show that its regulation "leave[s] open ample alternative channels" of communication.  *Ward*, 491 U.S. at 791. Here, the Village has not barred Norton or billboard operators in general from speaking on any topic or publishing any content it chooses.  Norton remains free to erect new off-premises billboards that reflect only static images, including a static LED billboard (though its representative testified that would not be cost-effective).  Norton also may erect an on-premises variable message digital LED billboard.   And Norton retains the ability to de-activate the variable messaging

component of the digital billboards at West Ross Avenue in order to display any static message of Norton's choosing.  (Doc. 36 at 85-86).  Therefore, Norton has ample alternative channels of communication.  *See Metromedia*, 453 U.S. at 507-508; *Ward*, 491 U.S. at 791; *accord City of Austin*, 142 S.Ct. at 1479 (Breyer, J., concurring, observing that while digitization and the ability to display messages in rapid succession might be more effective use of the billboard space, the "inability to maximize the use of their space in this way is unlikely to meaningfully interfere with their participation in the 'marketplace of ideas.'").

## IV.    Conclusion and Recommendations

For the reasons stated, the provisions of the Village's sign code that Norton has standing to challenge are constitutionally valid under intermediate scrutiny review. Therefore,  **IT IS RECOMMENDED THAT:**

1.  Plaintiff's motion for summary judgment (Doc.37) be DENIED; and that

2.  Defendants' motion for summary judgment (Doc. 38) be GRANTED in its entirety, with this case to be DISMISSED.


*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NORTON OUTDOOR ADVERTISING,
INC.,                                                                    Case No. 1:20-cv-350

      Plaintiff,

                                  Barrett, J.
           v.                                                        Bowman, M.J.

VILLAGE OF ST. BERNARD, OHIO, et al.,

      Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).