**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NORTON OUTDOOR ADVERTISING,
INC.,                                                    Case No. 1:20-cv-350

      Plaintiff,

                         Barrett, J.
      v.                                              Bowman, M.J.

VILLAGE OF ST. BERNARD, OHIO, et al.,

      Defendants.

**REPORT AND RECOMMENDATION**

This case was remanded from the U.S. Court of Appeals for the Sixth Circuit upon its reversal of this Court's grant of summary judgment in favor of the Defendants[1] (collectively, "the Village"), and against the Plaintiff Norton Outdoor Advertising, Inc. ("Norton"). On remand, both parties have filed supplemental cross-motions for summary judgment. For the following reasons, the undersigned again recommends that summary judgment be granted to the Village.

**I.     Factual and Procedural Background**

"The Village regulates signs and billboards via two chapters of its code: Chapter 711 and Chapter 1185." *Norton Outdoor Advertising, Inc. v. Village of St. Bernard, Ohio*, 99 F.4th 840, 842 (6th Cir. 2024). Since 2000, both Chapter 1185 and Chapter 711 have differentiated signs based in part based on whether the signs advertise subject matter that is located on the same premises where the sign is located, commonly referred to as "on-premises" signs, or whether they advertise other "off-premises" subject matter. *See*

---

[1]The Village Defendants include the Village of St. Bernard, its Building Commissioner, Gerald Stoker, and the Board of Zoning Appeals for the Village.

*id*. Chapter 1185 is located in Part Eleven of the Village's Ordinances, known as the "Planning and Zoning Code" and – consistent with its title ("Signs") - contains general definitions and permitting provisions for all "signs." (Doc. 1, ¶52). By contrast, Chapter 711 is located in Part Seven of the Village Ordinances, known as the "Business Regulation Code." (*Id*.) Entitled "Expressway Advertising," Chapter 711 exclusively regulates "outdoor advertising sign[s]." Ch. 711(a)(2).

Central to the parties' dispute is the fact that one of the ordinances within Chapter 711 bans digital electronic "variable message" billboards, which Norton would like to display.

> Norton sells and leases billboard space to third parties who "engage in political speech, social speech, public service speech, other forms of non-commercial speech, or commercial speech." R.1 (Compl. ¶¶ 14, 18) (Page ID #5-6). Norton operates nine outdoor advertising signs in the Village, some of which are digital billboards. *Id.* ¶¶ 17, 51 (Page ID #6, 14-15). … Norton applied for and received a permit from the Village to convert two static sign faces at 130 West Ross Avenue to "digital display faces." *Id.* ¶¶ 76-79 (Page ID #21-22). After Norton completed construction of the updated faces, however, the Village revoked the permit, citing Chapter 711.07(e)'s ban on "[m]ultiple message or variable message outdoor advertising signs." *Id.* ¶ 80 (Page ID #22); *see also* R. 38-3 (Not. of Non-Compliance at 1-2) (Page ID #1501-02) (letter from Gerald Stoker to Steve Knapp stating that Norton received a permit to construct only an LED billboard, not a variable-message sign, and that its sign violated Chapter 711.07(e)).

*See Norton, 9*9 F.4th at 843.

Norton immediately appealed the Village's denial of its request to display its variable message signs to the Board of Zoning Appeals. It lost its appeal before that body and subsequently, in the Hamilton County Court of Common Pleas. *See Norton Outdoor Advertising, Inc. v. Board of Zoning Appeals ("BZA"),* Hamilton County Court of Common Pleas Case No. A1900066. The Ohio Court of Appeals recently affirmed. *See Norton*

*Outdoor Advertising, Inc. v. Board of Zoning Appeals*, 2024-Ohio-5286, 2024 WL 4683693 (Ohio App. 1 Dist., Nov. 6, 2024).

In addition to its closely related state court case, Norton simultaneously challenged the Village's sign regulations in this Court on constitutional grounds.[2] Norton's federal complaint sets out seven claims in which it generally challenges eight separately enumerated provisions in Chapter 711, plus nine more in Chapter 1185. (*See* Doc. 1, Complaint, ¶1, describing its challenge to the Village's "codified ordinances" as facially unconstitutional; Doc. 1-1, copies of ordinances).[3] In a Report and Recommendation ("R&R") filed by the undersigned on June 16, 2022 and adopted by U.S. District Judge Michael R. Barrett on July 20, 2023, this Court rejected all of Norton's constitutional challenges to the ordinances contained in Chapters 711 and 1185 and granted summary judgment to the Village. (*See* Docs. 51, 63). But on April 19, 2024, the Sixth Circuit reversed and remanded for further consideration of a single claim relating to Norton's facial challenge to one of the ordinances in Chapter 711 – specifically Ch. 711.02 - which contains the definition of an "outdoor advertising sign." Norton's continuing facial challenge to eight provisions in Chapter 711, including the variable message ban in Ch. 711.07(e), hinges on the definition of an "outdoor advertising sign" because Chapter 711 applies only to signs so classified. *See e.g.,* Ch. 711.07(e) ("Multiple message or variable message *outdoor advertising signs* are not permitted.") (emphasis added).

The definition of an "outdoor advertising sign" in Ch. 711.02(a)(2) contains three exemptions to the scope of Chapter 711 regulation. On appeal, the Sixth Circuit held that

---

[2]Norton also facially challenged the Village's sign codes in state court. But the state court declined to address the constitutional challenges based on jurisdictional limitations.

[3]The complaint attaches the text of all seventeen ordinances. (Doc. 1-1). But throughout the complaint, Norton refers to the provisions collectively as if they were a single "Ordinance."

the first three of those exemptions are content-neutral. *See* Ch. 711.02(a)(1)-(3). But the Sixth Circuit held that a fourth exemption for "public service signs" in Ch. 711.02(a)(4) is content-based and therefore subject to a "strict scrutiny" standard of review, which the Village cannot meet. The lone unconstitutional exemption within the definition of "outdoor advertising sign" threatens the constitutionality of all other Chapter 711 provisions – *unless* the exemption in Ch. 711.02(a)(4) is subject to severance. In the event of severance, the remainder of Chapter 711 might stand. In lieu of resolving the ultimate issue "of whether the remainder of Chapter 711 can survive apart from its unconstitutional exemption," the appellate court remanded with instructions for this Court to consider whether the unconstitutional provision is severable under state law. *Norton*, 99 F.4th at 852.

## II. Analysis of the Parties' Supplemental Motions Under Rule 56[4]

### A. Whether the Village Adequately Preserved the Severability Issue

Notwithstanding the Sixth Circuit's mandate to consider severability, Norton boldly proclaims: "This Court cannot consider severance, as it has been waived." (Doc. 74, PageID 2249). According to Norton, the Village failed to adequately raise and preserve the issue of severability in its first motion for summary judgment. Based on the asserted waiver, Norton argues that this Court should strike down Chapter 711 in its entirety without any consideration of severability on the merits.

The undersigned rejects Norton's procedural argument for several reasons. First, although the closely related doctrines of waiver and forfeiture are frequently conflated,

---

[4]The undersigned applies the same standard of review as employed in the prior R&R. Summary judgment remains appropriate based on the absence of any genuine disputes as to any material fact and the conclusion that the  Village is entitled to judgment as a matter of law.

the issue at hand is more properly understood as a potential forfeiture because severability is not a defense required to be raised in Rule 12.

> While proper to speak in terms of "waiver" when discussing a defendant's failure to preserve a defense in the way Rule 12(h)(1) requires (since the rule itself employs the term), when considering whether a defendant has unintentionally lost the defense through his delay and participation in the litigation, the issue is more properly considered one of "forfeiture."

*King v. Taylor*, 694 F.3d 650, 658 n.3 (6th Cir. 2012) (internal citations omitted). Unlike waiver, a defense that has been forfeited may be reviewed by a district court in the exercise of its discretion. *Id.*, 694 F.3d at 659 (internal citations omitted). To be clear, the undersigned does not agree that the Village has forfeited its right to argue severability. But in the alternative, the undersigned exercises judicial discretion to review the issue.[5]

Granted, neither party argued severability extensively in their prior motions for summary judgment. But both included *some* argument. So the Sixth Circuit explicitly tasked this Court with reviewing the issue to determine whether Norton is entitled to any remedy:

> With the existence of a constitutional violation, we naturally turn to the question of remedy. But here the parties leave us with an issue for another day. Even when a constitutional violation exists, we do not exercise lightly our power to invalidate a law…. The parties have not briefed on appeal whether the public-service-sign exemption is severable, such that the remainder of Chapter 711 could be left to stand under *Austin*. Below, the Village "reserve[d] the right to argue severability ... [and] to present a

---

[5]In the course of reviewing this procedural argument, the undersigned confirmed that Norton did not present it in its prior motion for summary judgment or on appeal before the Sixth Circuit, raising at least the specter of Norton's own forfeiture or waiver. *See*, *e.g. generally*, *Norton*, 99 F.4th at 845-846 (declining to consider Norton's challenge to this Court's conclusions on standing based on Norton's failure to object to the R&R and failure to address standing in its opening appellate brief); *Norton v. BZA*, 2024 WL 4683693, at *6 (applying waiver to Norton's argument that Stoker was not authorized to issue the permit violation notice because Norton failed to make the argument to the trial court); *id.* at *10 (applying waiver to argument that Norton's sign was not a variable message outdoor advertising sign, and declining to consider new argument that Ohio law preempts the Village's ability to enforce the variable message ordinance); *id.* at *11-13 (Kinsley, J., concurring opinion) (criticizing Norton's failure "to raise and preserve its most meritorious argument: that Norton's sign constitutes a protected nonconforming sign under the Village's sign regulations" along with another issue regarding the limitation of remedies under Ch. 711).

severability analysis to determine whether ... legal effect can be given to the parts [of the ordinances] which are constitutional." R. 38 (Village Mot. Summ. J. at 33) (Page ID #1492). Norton briefly argued below that the Village would fail to meet its burden on severability, because "the very essence of the [ordinances] is the use of a framework that defines regulations by content and then uses definitions to apply a myriad of exceptions." R. 42 (Norton Opp. Summ. J. at 19) (Page ID #1604).

Severability, however, is a distinct legal issue in this case meriting further thought from the parties. It is a question of Ohio state law "best resolved below" in the first instance. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Because the parties have not briefed the issue of severability and the district court has yet to weigh in, we will not resolve the question of whether the remainder of Chapter 711 can survive apart from its unconstitutional exemption. *See, e.g.*, *Pratt v. United Auto., Aerospace & Agric. Implement Workers of Am., Loc. 1435*, 939 F.2d 385, 391-92 (6th Cir. 1991).

*Id*., at 852; *see also id*., at 842 (holding that remand is required because "[t]he parties and the district court… have yet to consider whether the unconstitutional provision is severable.").

The undersigned finds consideration of the merits of severability to be appropriate even if the above language does not strictly foreclose Norton's new procedural argument. In the first go-round on summary judgment, the Village argued that all seventeen provisions that make up its sign code are constitutional. Based on the number of claims presented, the Village had a lot of ground to cover.[6] So the Village was granted leave to file a memorandum nearly double the standard length. Given the number of issues in play and that severability was argued in the alternative, the latter argument was relegated to 239 words. (*See* Doc. 38, PageID 1491-1492). But the Village included a "request[] to allow Defendants to present a severability analysis" at a later date. Despite its phrasing,

---

[6]Norton continued the same "barrage of attacks" on appeal that it had presented to this Court, raising so many issues that the Sixth Circuit was "left to wonder whether a more constitutionally offensive scheme could exist." *Norton*, 99 F.4th at 844. Rejecting that "dystopian account," the Sixth Circuit found only "a single content-based exemption" in all of Chapter 711. *Id.*

the Village's intent to argue severability is plain, supported by citation to appropriate case law. *See*, *e.g.*, *Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927). The brief discussion with citation to relevant case law distinguishes this case from those in which a defendant has wholly failed to raise the issue. *Accord, Medical Center Pharmacy v. Mukasey*, 536 F.2d 383, 393 n.21 (5th Cir. 2008) (comparing cases lacking *any* argument or citation, holding that FDA did not waive severability issue despite its "austere" argument).

Had this Court initially ruled in Norton's favor, it would have directed the parties to file supplemental briefs on severability. After all, as the Sixth Circuit recently pointed out, "the federal courts have 'a decisive preference for surgical severance rather than wholesale destruction' of a statutory scheme." *Norton*, 99 F.4th at 852 (quoting *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 140 S. Ct. 2335, 2350-51 (2020)); *see also Ayotte v. Planned Parenthood of Northern New England*, 126 S.Ct. 961, 967, 546 U.S. 320, 328-329 (2006) (holding that in general, courts should "enjoin only the unconstitutional applications of a statute… [or] sever its problematic portions while leaving the remainder intact.").

The case law on which Norton relies to support waiver is distinguishable. For example, *American Meat Institute v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) involved a group of meat producers who filed suit to challenge a new Michigan law regulating the sale of meat after winning a similar challenge to a prior statute. *See Armour & Co. v. Ball*, 468 F.2d 76 (6th Cir. 1972). The new case proceeded through seven years of litigation that included two rounds of summary judgment motions and a trial, following which the trial court held the statute to be unconstitutional and granted permanent injunctive relief.

*American Meat Inst. v. Ball*, 550 F. Supp. 285 (D.C. Mich. 1982). Only then did the defendants first raise the issue of severability in a *post-trial* motion.

*Pridgeon* is distinguishable on its procedural history alone. But it also says nothing about this Court's discretionary authority to review inadequately briefed arguments. Here, the Village adequately preserved the issue of severability in its first motion for summary judgment. Alternatively, the undersigned finds good cause to consider the issue on the merits. *See L.D. Mgmt. Co. v. Thomas*, 456 F. Supp.3d 873, 878 (W.D. Ky. 2020) (addressing the merits of severability, noting recent case law that suggests that severability is an essential "next step" following a determination that a statute is unconstitutional).

### B. The Problematic Public Service Exemption in Chapter 711

Before turning to the merits of severability, the undersigned more closely examines the Sixth Circuit's opinion, which focused on Norton's claim that the collective ordinances in Chapter 711, which regulates only "Expressway Advertising" a/k/a "outdoor advertising signs," are facially unconstitutional.[7] Neither this Court nor the Sixth Circuit found any specific infirmities with the text of the variable message ban in Ch. 711.07(e), or with most of the ordinances In Chapter 711. But "the entirety of Chapter 711 is dependent and focused upon the definition of an 'outdoor advertising sign.'" *Norton v. BZA*, 2024 WL 4683693 at *9. And Norton won part of its appeal of this Court's ruling on the definition of an "outdoor advertising sign" in Ch. 711.02(a). The definition that remains at issue reads as follows, in relevant part:

---

[7] *See* Doc. 1, Count One of Complaint at ¶¶107-108, PageID 27 (alleging that multiple provisions of Chapters 1185 and 711, including but not limited to definitions like that for "outdoor advertising sign," are content-based and facially invalid); *see also* Count Six (alleging violations of 42 U.S.C. § 1983) and Count Seven (seeking attorney fees and costs under 42 U.S.C. § 1988).

"Outdoor Advertising Sign" means any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the Interstate system or primary system in this Village, except:

(1)     Signs primarily intended to promote the sale of goods, products, services, or events on the same premises as the sign; provided, however, "outdoor advertising sign" shall include any sign promoting the sale of goods, products, or services on the same premises as the sign but which are primarily intended to promote sale off premises.

(2)     Directional or traffic control signs posted by a public authority.

(3)     Signs advertising the sale or lease of property on which they are located.

(4)     Public service signs which disclose information such as time or weather, provided such signs are not used to advertise or promote goods, products, services, or events.

Ch. 711.02(a).

The first three exemptions are content-neutral provisions under *Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61, 142 S.Ct. 1464 (2022) (upholding location-based sign regulation as content neutral). "Like *Austin* and unlike *Reed*, …the most salient distinction within Chapter 711 appears to boil down to on- versus off-premises signs…." *Norton*, 99 F.4th at 848 (footnotes added). However, the Sixth Circuit held that Ch. 711.02(a)(4) constitutes a "single content-based exemption" that is presumptively unconstitutional under the First Amendment.[8] *See Norton*, 99 F.4th at 844; *see also Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2226, 576 U.S. 155, 163 (2015)

---

[8]As part of its analysis, the Sixth Circuit reasoned that, despite language suggesting that "commercial messages are primarily at issue, nothing in [the] definition explicitly excludes non-commercial messages." *Id.*, 99 F.4th at, 849; *compare Norton v. BZA*, 2024-Ohio-5286, 2024 WL 4683693, at *8-9 (holding that "outdoor advertising signs under Chapter 711 are simply a subset of advertising signs under Chapter 1185" and that both Chapters regulate "advertising signs that promote goods or services that are off premises from where the sign is located.").

(striking down a town sign ordinance that banned all display of outdoor signs but exempted twenty-three categories of signs based on content-based regulations).

Unlike the other three constitutionally permissible exemptions, the fourth exemption cannot be applied without reference to the actual content of a sign.

> Namely, we must consider (1) whether a sign fulfills a "[p]ublic service" by "disclos[ing] information such as time or weather"; and (2) whether a sign nonetheless "advertise[s] or promote[s] goods, products, services, or events." Because the public-service-sign exemption is just that - an exemption - its operation means that the definition of outdoor advertising sign is also content based. Although this scheme is not nearly as stratified or complex as the ordinance at issue in *Reed*, which prescribed different rules and regulations for twenty-three different categories of speech, 576 U.S. at 159, 135 S.Ct. 2218, it cannot be administered by being "agnostic as to content," *Austin*, 596 U.S. at 69, 142 S.Ct. 1464. No doubt, the Village is correct that much of the work of Chapter 711 is accomplished in an entirely content-neutral way: by simply inquiring whether a sign pertains to activities on- or off-premises. Still, the Village must then go further when implementing the ordinances, by inquiring into whether the content displayed on an off-premises sign meets the criteria of the public-service exemption. This cannot be done in a content-neutral fashion.
>
> One can easily envision signs that are exempted from regulation based on their content. A private individual or company could operate a variable-message sign to encourage drivers not to litter, but likely could not do the same to encourage the citizens of the Village to attend the high school softball game (an "event"). Likewise, a "click it or ticket" message encouraging seat-belt use could be displayed on changing digital billboards, but not a message encouraging citizens to be familiar with the proper uses for naloxone (a "good" or "product"). And a public-health organization might be able to post a flashing sign encouraging drivers to stay up to date on their vaccines, but the local pharmacy may be barred from doing so by encouraging drivers to receive the flu shot at its closest location. More basically, the threshold inquiry of the public-service exemption - whether the content of a given sign serves a "public service" - is laden with the types of content-based and value-judgment determinations that call for strict scrutiny under the First Amendment.

*Id.*, 99 F.4th at 850. The appellate court continued:

> To determine whether a sign displays the favored speech, we must inherently consider its content. For this reason, Chapter 711 is a content-based regulation subject to strict scrutiny.

*Id*., 99 F.4th at 851.[9]

In short, because the Village cannot satisfy the strict scrutiny standard applicable to content-based regulations, the exemption contained in Ch. 711.02(a)(4) is unconstitutional. And so long as the exemption remains part of the foundational definition of an "outdoor advertising sign," then *all* ordinances within Chapter 711 are impacted and "cannot stand as written." *Id*., 99 F.4th at 844. But if the problematic exemption is severable from the rest of the definition, then the remainder of Chapter 711 is content-neutral and can be "left to stand under *Austin*." *Id.* at 852. The outcome of this case therefore turns on severability.

### C. Determining Whether the Exemption is Severable under *Geiger*

The controlling legal test for severability in Ohio was established nearly a century ago in *Geiger v. Geiger*, 160 N.E. 28, 32, 117 Ohio St. 451 (Ohio 1927). There, the Ohio Supreme Court held that a statutory provision that provided for certain appeals to lie in different courts, depending on the county, was unconstitutional under the state constitution. *Id.* at 465. But *Geiger* held that the unconstitutional provision could be separated or severed, allowing related constitutional provisions to be interpreted in a manner that preserved the constitutionality of the statute as a whole. *Id.* at 469-470. In so holding, *Geiger* adopted a three-part test that had been used by other state and federal courts:

---

[9]Norton [mis]characterizes the Sixth Circuit's statement that "Chapter 711 is a content-based regulation" as a holding that the eight individual ordinances within Chapter 711 are unconstitutional. That view ignores context. Reading the opinion as a whole, the Sixth Circuit declined to resolve the ultimate issues. *See e.g.*, *id*. at 852 ("The parties have not briefed on appeal whether the public-service-sign exemption is severable, such that the remainder of Chapter 711 could be left to stand under *Austin*."); *id.* at 852. ("Because the parties have not briefed the issue of severability and the district court has yet to weigh in, we will not resolve the question of whether the remainder of Chapter 711 can survive apart from its unconstitutional exemption.").

(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*Id.*, 160 N.E. at 33, 117 Ohio St. at 466 (internal quotation marks and additional citations omitted). Under *Geiger* test, Ch. 711.02(a)(4) is severable from both the rest of the definition of an "outdoor advertising sign" and from Chapter 711 as a whole.

### 1. Are the Challenged Parts of the Statute Capable of Separation?

Norton suggests that "the Ohio Supreme Court has taken a confusing approach" to the first prong of *Geiger*. (Doc. 74, PageID 2254). In fact, Ohio courts have focused almost exclusively on whether the c*onstitutional portion* of the ordinance is able to "stand by itself." *See*, *e.g. State ex rel. Sunset Estate Props., LLVC v. Village of Lodi*, 142 Ohio St. 3d 351, 2016-Ohio-790, 30 N.E.3d 934, ¶¶ 17-18 (2015) (holding that the "unconstitutional final sentence… can be severed from the rest of the ordinance because the remaining –[constitutional] portion of the ordinance can stand by itself…." ); *State ex rel. Doersam v. Indus. Comm'n of Ohio*, 45 Ohio St. 3d 115, 123, 543 N.E.2d 1169 (1989) (dissent, Wright, J., criticizing the majority's failure to consider whether severed portion could stand alone). Norton points out that a focus on the constitutional portion results in it being "a rare occurrence where provisions could not be read out of a statutory scheme" of a statute. (Doc. 74, PageID 2254). But a liberal construction of *Geiger*'s first hurdle is consistent with Ohio's post-*Geiger* statutory presumption in favor of severance. *See*, *e.g*., Ohio Rev. Code Ann. § 1.50; *see also State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St. 3d 351, 356, 30 N.E.3d 934, 938-939 ("R.C. 1.50 provides that statutory

provisions are presumptively severable", including municipal ordinances). In addition to Ohio R.C. § 1.50, an express severability provision in Ch. 1121.04 applies to Chapter 711 as part of the Zoning Code. *See Norton v. BZA*, 2024 WL 4683693 at *9.

Here, the definition of an "outdoor advertising sign" in Ch. 711.02(a) can easily "stand by itself" without the inclusion of the unconstitutional fourth exemption. Norton advocates for the opposite conclusion based on the argument that Ch. 711.02(a) implicitly relies on the broader definition of "sign" in Chapter 1185. But *Geiger* asks whether the constitutional portion can stand on its own if the unconstitutional portion is severed – not in relation to any other statute. And Norton is foreclosed from resurrecting its broad facial challenges to the definition of "sign" or other provisions in Chapter 1185.[10]

To the extent that it is separately considered, the constitutional fourth exemption arguably also can be read as a stand-alone content-based subcategory because it is distinct from the first three content-neutral exemptions. The analysis of other jurisdictions that apply similar tests to *Geiger* supports the conclusion that Ch. 711.02(a)(4) is severable. *See, e.g., Barr*, 140 S.Ct. at 2352, 591 U.S. at 628 (considering whether the constitutional portion of a statute is "capable of functioning independently" and acknowledging "it is fairly unusual for the remainder of a law not to be operative.") (internal quotation marks and citation omitted); *Lamar Co., LLC v. Lexington-Fayette Urban County Government*, 677 F. Supp.3d 673, 695 (E.D. Ky. 2023) (holding sign ordinance would "comfortably stand on [its] own" absent the challenged exemptions).

---

[10]Norton improperly attempts to resurrect multiple arguments regarding Chapter 1185. The Sixth Circuit held that Norton forfeited any argument relating to standing and that, "[i]n any event, ….the district court did not err." *Norton*, 99 F.4th at 844; *see also id*. at 845-46, quoting *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007) ("Prime Media's standing with regard to the size and height requirements does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions.").

### 2. Does Striking the Unconstitutional Exemption Make it Impossible to Honor the Apparent Intention of the Legislature?

The second prong of *Geiger* asks this Court to determine whether the unconstitutional provision is so connected with the general scope of Chapter 711 as to make it impossible to give effect to the Village's legislative intent if the exemption is stricken. Phrased in simple terms: "Would the legislature have preferred what is left of its statute to no statute at all?" *Ayotte*, 126 S.Ct. at 968, 546 U.S. at 330. In considering this question, the undersigned keeps in mind the general principle that "the tail (one unconstitutional provision) [should] not wag the dog (the rest of the codified statute…). " *Barr*, 140 S.Ct. at 2351, 591 U.S. at 627. "Constitutional litigation is not a game of gotcha …, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Id*. In contrast with Norton's view, [11] the undersigned finds this general precept to be wholly consistent with *Geiger*.

To determine legislative intent, this Court begins with the Village's explicit "statement of intent for promulgating rules 'regulating outdoor advertising signs,' including reducing motorists' distractions, improving highway safety, protecting emergency responders, maintaining and improving property values, and reducing 'visual blight.'" *Norton*, 99 F.4th at 842, (quoting Ch. 711.01(a-e); *see also, generally, Norton v. BZA.*, 2024 WL 4683693, at *8-9 (discussing the express intent of Chapter 711). Norton concedes that the "general scope" of Chapter 711 is to regulate billboards visible from the highway. (Doc. 80, PageID 2439, "Of course the broad-reaching entirety of Chapter 711 was to regulate billboards."). Enacting sign regulations for the purpose of "traffic safety

---

[11]Norton argues that Ohio has a unique and inflexible rule of statutory construction that would often result in the "tail wagging the dog" by flatly barring severance of any exemption. More on that below.

and the appearance of [a] city…are substantial governmental goals." *Metromedia, Inc. v. City of San Diego*, 101 S.Ct. 2882, 2892, 453 U.S. 490, 507-08 (1981);

Consistent with the explicitly stated legislative intent to promote traffic safety and aesthetics and the "Expressway Advertising" title of Chapter 711, the definition of an "outdoor advertising sign" requires first and foremost that the sign be "visible from the main traveled way of any highway on the interstate system or primary system in the Village," Ch. 711.02(a), (hereafter "visible from the highway").[12] All eight ordinances relate to the stated purpose and defined scope of regulating Expressway Advertising.

> First, Section 711.01 provides the intent of the chapter…. Section 711.02 then provides the relevant definitions for the chapter, including the definition of an outdoor advertising sign. Section 711.03 then provides the "General Standards" for "[a]ll outdoor advertising signs." Section 711.04 then provides "Outdoor Advertising Sign Certificate Requirements." Section 711.05 governs nonconforming "outdoor advertising signs." Section 711.06 then provides the applicable standards for an "advertising device," which would seem to be included as a subset of an "outdoor advertising sign" based on the definition as "devices" are expressly listed within the definition of an "outdoor advertising sign." *See* St. Bernard Cod. Ord. 711.02. Section 711.07 then provides the "Standards for Outdoor Advertising Signs." Lastly, Section 711.08 governs "Enforcement," including penalties, for outdoor advertising signs. Thus, it is clear from a review of the chapter that Chapter 711 provides the "definition, rules, regulations, and penalties" for an "outdoor advertising sign," i.e., expressway advertising, as indicated in Section 1185.01(c).

*Norton*, 2024-Ohio-5286, 2024 WL 4683693, at *9.

Given the well-articulated purpose to regulate Expressway Advertising, it is equally clear that the lone unconstitutional exemption to the definition of an "outdoor advertising sign" is not "so connected" with the scope of Chapter 711 as to make it impossible to give effect to legislative intent if that exemption is stricken. The Village's explicit severability

---

[12]This includes signs that may be visible from *any* "main traveled way of any highway" such as State Route 562 a/k/a the Norwood Lateral, and part of the national highway system (I-75).

also supports that conclusion. *See Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 389 (6th Cir. 2001) (holding that courts "must, if possible, give effect to the Ordinance's severability clause so as not to invalidate the entire act."). "[I]f a severability clause is included in a piece of legislation, the legislative body intended for it to be severable." *Village of Ottawa Hills v. Afjeh*, 2004-Ohio-7154, ¶ 48, 2004 WL 3017241, at *6 (Ohio App. 6 Dist. 2004).

In an attempt to avoid this outcome, Norton suggests that "the Village cannot colorably argue that its intention has always been to prohibit digital billboards" because the Village initially granted Norton's permit application. Norton suggests the Village's initial permit approval must have evidenced an intention to allow Norton to erect *more* variable message billboards. (Doc. 90 at PageID 2435-36). Apart from the sheer implausibility of Norton's argument, it is irrelevant. Nothing in *Geiger* supports inquiry into the Village's intent, on a microscopic level, when it initially approved Norton's permit application. The only issue with which *Geiger* is concerned is the Village's broad *legislative* intent in enacting Chapter 711 as part of its Zoning Code. And that intent is clearly set forth in Ch. 711.01.

Ignoring the Village's expressly articulated intent for Chapter 711, Norton alternatively invites this Court to focus *exclusively* on the apparent intent behind the enactment of the unconstitutional exemption. The reference to a "time or weather" variable message display suggests an intent to clarify that such ubiquitous signs are not subject to the variable message ban that applies to other off-premises signs visible from the highway. *See* Ch. 711. 07(e). Given that apparent intent, Norton posits that the *entire* purpose of Chapter 711 will be frustrated if banks or others can no longer display such

time and temperature signs that may be visible from the highway. In Norton's view, the potential for *any* previously-exempt signs to be subject to Ch. 711 – no matter how small that number might be -  is enough to take down the entirety of the sign code.

But *Geiger* insists that a court consider the impact of severance on "the general scope of the whole." *Id.*, 160 N.E. at 33, 117 Ohio St. at 466. Here, the Village's legislative intention must be considered for the entire collection of ordinances within Chapter 711. To focus instead on the exemption in isolation ignores the Village's purpose in regulating all Expressway Advertising, particularly by limiting "off-premises" outdoor advertising signs or billboards. *See also Norton*, 99 F.4th at 848 (noting that the "salient" exemptions regulate off-premises outdoor advertising signs while allowing on-premises digital signs). In context, the fact that the unconstitutional exemption is but one of four otherwise content-neutral exemptions in the definition of outdoor advertising signs - not to mention the lone content-based provision in *all* of Chapter 711 - suggests that the odd exemption is not overly entangled with "the general scope of the whole."

In considering the appropriate context, the court *may* consider, as a relevant factor, the likely number of signs that the Village intended to exclude in Ch. 711.02(a)(4) in comparison to the likely number of regulated signs. Norton asserts that the Village's failure to prove an *exact number* of impacted signs precludes the award of summary judgment to the Village. Without acknowledging its own lack of evidence, Norton proceeds to argue that it is instead entitled to judgment because severance would result in a "*significant* increase in the amount of outdoor advertising signs." (Doc. 80 at PageID 2436-37; Doc. 74 at PageID 2260, emphasis added).

17

No precise numerical data is required to conclude that Chapter 711 remains consistent with the Village's legislative intent if the public service exemption is stricken, because it is sufficient here to consider the relative number of signs impacted by severance versus the number of constitutionally regulated signs. "The Constitution and common sense aren't enemies." *OPAWL - Building AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 782 (6th Cir. 2024) (eschewing the need for empirical proof in the face of obvious legislative intent). Even Norton concedes that the Village's purpose in "creating a *few* exemptions to the *broad* regulation was to allow, but not promote, public service exemptions." (Doc. 80, PageID 2439) (emphasis added).

It is also worth noting that any signs potentially impacted by severance might yet be exempt under the other three content-neutral exemptions[13] Consider an on-premises temperature sign at a bank that happens to be visible from the highway. Said sign would still be exempt if it "primarily" advertises the bank's goods or services. *See* Ch. 711.02(a)(1).

Under any rational construction, the universe of "outdoor advertising signs" visible from the highway, as defined by the constitutional portion of the definition, far outnumbers any signs that might fall solely within the unconstitutional exemption. Therefore, severing the discrete exemption in Ch. 711.02(a)(4) would minimally impact the overall legislative intent to promote traffic safety and aesthetics by limiting off-premises "outdoor advertising signs." *See generally*, *Int'l Outdoor, Inc. v. City of Troy*, No. 17-10335, 2021 WL 2275977, at *4 (E.D. Mich., Apr. 6, 2021) (severing *multiple* content-based exemptions from a sign

---

[13]Norton suggests that the Sixth Circuit's opinion prohibits this Court from finding any overlap among the exemptions. It does not. The Sixth Circuit merely rejected the Village's position that the unconstitutional exemption was entirely superfluous, based on that court's own hypothetical examples.

18

code because they were "discrete sections of a lengthy and detailed ordinance," and the unconstitutional portions were not so entangled with the remaining constitutional provisions that they could not be removed), *aff'd sub nom. Int'l Outdoor, Inc. v. City of Troy, Michigan,* 77 F. 4th 432 (6th Cir. 2023); *Zillow, Inc. v. Bork*, 593 F.Supp.3d 619, 634 (E.D. Ky. 2022) (holding unconstitutional exceptions in Open Records Act were severable because the purpose of the statute - funding the provision of open records – could be maintained without the exceptions).

Trying another tact to undermine the articulated legislative intent in Ch. 711.01, Norton claims that severing Ch. 711.02(a)(4) will create potential conflicts with the retroactive enforcement of other Chapter 711 ordinances. Norton postulates that subjecting even one previously-exempt sign to additional regulation under Ch. 711 "makes it impossible to give effect to the apparent intention of the Village council" in enacting three provisions that, respectively, "limit the number of signs through the cap and replace system, prohibit changing [variable message] signs, and apply Interstate Highways regulations." (Doc. 74 at 2261). But again, *Geiger* requires this Court to focus on the Village's legislative intent in enacting the <u>whole</u> of Chapter 711, including whether, after severance of the unconstitutional exemption in Ch. 711.02(a)(4), the "general scope" of Chapter 711 and definition of outdoor advertising sign remain consistent with that intent. Norton's attempt to redirect this Court to questions about whether the Village might: (1) locate a previously exempt sign under Ch. 711.02(a)(4) that might newly satisfy the definition of an outdoor advertising sign[14]; (2) find that previously exempt sign to be in

---

[14] In its reply memorandum, Norton also hypothesizes that the Village will have to engage in more unconstitutional content-based review to calculate precisely which signs might be impacted. Not so. After severance, the Village may conduct any such review solely by reference to the remaining content-neutral and constitutional definition of outdoor advertising signs.

conflict with another Chapter 711 ordinance; and (3) attempt retroactive enforcement[15] is both overly speculative and inconsistent with *Geiger's* macro-focus on the "whole."

Returning the focus to the Village's legislative intent in enacting Chapter 711, the undersigned also finds persuasive *Lamar Co., LLC v. Lexington-Fayette Urban County Government (LFUCG)*, 677 F. Supp.3d 673, in which the court held that unconstitutional content-based exemptions to a sign code that banned off-premises electronic message display signs could be severed under Kentucky law. Though the *Lamar* exemptions were greater in number than the lone exemption at issue here, the exemptions in that case were also narrowly drawn. As in this case, *Lamar* rejected the plaintiff's argument that the constitutional parts were "'essentially and inseparably connected with and dependent upon' the allegedly unconstitutional provisions" after considering legislative intent and the applicable "presumption of severability."[16] Given that presumption of severability, *Lamar* placed the burden on the plaintiff to show "that the LFUCG Council would not have enacted the ordinance absent the challenged provisions." *Id.*, 677 F. Supp. at 691. The plaintiff could not make that showing. "Lamar has not presented evidence suggesting that LFUCG would not have enacted the ordinance without the listed exemptions, or that the law could not be enforced without them." *Id.* at 695.

---

[15] The Village admits that a "limited segment of 'public service' signs" could *potentially* be impacted. Assuming that at least one such sign exists, it does not follow that the Village would enforce new regulations against a formerly exempt sign. The Village's enforcement ability may be limited by Ohio R.C. 713.15 (generally prohibiting retroactive application of zoning ordinances), by Village Cod. Ord. Ch. 711.05(c) (authorizing non-conforming signs for which a permit has been issued), or by other constitutional concerns. Alternatively, the Village could grant a variance in lieu of retroactive application. *See also, generally, Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 530 (6th Cir. 2021) (distinguishing issues of retroactive enforcement from statutory severance under the First Amendment, explaining that "the centuries-old rule that the government cannot subject someone to punishment without fair notice is not tied to speech").

[16] *Lamar* further held that despite the plaintiff's showing of injury, the plaintiff ultimately lacked standing because it was unable to show that its injury could be redressed after severance. *See id.*, 677 F.Supp.3d at 695. Below, the undersigned re-examines the previously unexamined issue of redressability after severance.

As the plaintiff in this case, Norton retains the burden of proof to prove that the challenged provisions are facially unconstitutional and caused it injury. The Sixth Circuit determined only that Norton had demonstrated that one discrete provision in Ch. 711.02(a)(4) was unconstitutional, remanding to this Court to determine whether that unconstitutional provision could be severed. Like the governmental entity in *Lamar*, the Village is aided by the strong presumption in favor of severability that applies under Ohio law. Norton's argument that the Village would have preferred to enact no regulation of Expressway Advertising at all rather than enact Chapter 711 without the public-service exemption is unpersuasive.

### 3.  Does Severance Require the Insertion of Words or Terms?

*Geiger*'s third prong requires this Court to inquire if the insertion of words or terms is necessary in order to separate the constitutional part from the unconstitutional part. This last part of *Geiger* is easily satisfied. No words are required to be added to sever Ch. 711.02(a)(4) from the remainder of Ch. 711.02(a).[17]

### D.  Norton's "Broader Law" Argument

Norton presents one additional argument that relates to legislative intent – that *severance of any type of exception or exemption in a statute is flatly prohibited under Ohio law* based on a principle that a court cannot create "a broader law than what the legislative body intended." (Doc. 74, PageID 2254). Norton maintains that this is an "unyielding limitation" in Ohio, (Doc. 74, PageID 2255), despite the failure of *Geiger* to mention it. Norton begins with the assumption that if 711.02(a)(4) is severed, one or more

---

[17]Norton argues alternatively that to give full effect to the legislative intent to provide an exemption for "time or weather" or other "public service" signs, this Court would be required to draft entirely new language. This argument finds no support in *Geiger*. If accepted, a court would never be able to sever or strike any part of any statute without replacement language.

existing signs could be subject to new regulation.[18] *But see infra* at 20 and n. 15. If even one sign could be subject to any new regulation, then the law would be "broader" and severance would be impossible under Ohio's allegedly "unyielding" rule. As its primary authority, Norton cites to non-binding dictum from a 1953 Supreme Court case. *See State ex rel. English v. Indus. Comm.*, 160 Ohio St. 215, 115 S.E.2d 395 (Ohio 1953).

In *English*, the majority's *per curiam* opinion denied a petition for a writ of mandamus on grounds that the Ohio Supreme Court had no authority to declare the challenged statutory provision to be unconstitutional. In a concurrence, Justice Kingsley A. Taft explained why he agreed with the denial of the petition but would have held the challenged statute to be unconstitutional. *Id.* at 218-219. He further reasoned that if the challenged provision was unconstitutional, the Court would need to strike the entire statute, not just the unconstitutional exception, which in turn would leave the petitioner without a viable remedy.[19] To support his conclusion and without reference to *Geiger*, the concurrence quotes from an American Jurisprudence treatise that sets out the general principle that a court cannot sever an exception when it would create a "broader law" than the legislature intended. *Id.* While stating a generic rule of statutory construction,[20] the *English* dictum has no real application here in light of the controlling application of *Geiger*. Additional controlling Ohio law confirms that "[t]he essential goal of statutory construction is to give effect to the intent of the General Assembly." *In re Title Ins. Antitrust Cases*, 702

---

[18] Norton (incorrectly) asserts that any newly non-exempt signs would be required to apply for new permits under Ch. 711. But all signs - whether or not exempt from Ch. 711 – already require permits under Ch. 1185.002, a fact that would not change after severance.

[19] In modern constitutional parlance, Justice Taft's analysis addresses the redressability component of standing.

[20] The general rule is not always as rigidly phrased. For example, in *State v. Howard*, 504 S.W.3d 260, 269 (Tenn., 2016), the court phrases it this way: "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without *unduly* restricting or expanding a statute's coverage beyond its intended scope." (emphasis added, additional citations omitted).

22

F.Supp.2d 840, 873 (N.D. Ohio, 2010), citing *Stevens v. Ackman,* 91 Ohio St.3d 182, 193, 743 N.E.2d 901 (2001). The *Geiger* test adheres to that essential goal.

The conclusion that the *English* dictum does not trump *Geiger* finds support in the fact that the *English* concurrence has been cited only 3 times over the past 70+ years, in contrast to more than 100 cases citing to *Geiger*. *Geiger* allows for a deeper and more nuanced analysis of legislative intent that is consistent both with constitutional developments in sign law and with Ohio's modern presumption of severability. Severance of a minor or discrete exemption is permitted so long as the general scope of the statute remains consistent with legislative intent. *See, generally*, *Wagner v. City of Garfield Heights*, No. 1:11-cv-2173, 2013 WL 12099080 at *9 (N.D. Ohio, Feb. 11, 2013) (enjoining enforcement against plaintiff of content-based ordinance governing "political signs," but also holding provision to be severable from overall sign code because the unlawful provision addressed only "a small segment of all possible signs," and most of the sign code was "not drafted with political signs in mind.").[21]

No doubt that one of the reasons that Norton urges this Court to adopt the *English* dictum is that one of just three cases to cite to *English* is *City of Tipp City v. Dakin*, 186 Ohio App.3d 558, 2010-Ohio-1013, 929 N.E.2d 484 (Ohio App. 2 Dist. 2010), a sign case on which Norton heavily relies. Curiously, *Tipp City* does not cite to the controlling *Geiger* test, nor does it address Ohio's strong presumption in favor of severability.

---

[21]Norton asserts that a later decision affirming the trial court supports Norton because "[s]everance was not considered applicable." (Doc. 80, PageID 2441, citing *Wagner v. City of Garfield Heights*, 675 Fed. Appx. 599, 607 (6th Cir. 2017). That statement is misleading. The appellate court made no determination at all regarding the "applicability" of severance. Instead, in 2013, the Sixth Circuit initially reversed the trial court after concluding the challenged provision was content-neutral and therefore constitutional. The Supreme Court granted the petition for certiorari and vacated that decision under *Reed*, which supported the trial court's conclusion that the provision was content-based. Upon remand from the Supreme Court, the Sixth Circuit affirmed the trial court's judgment under *Reed* without *any* comment on the trial court's holding on severability.

In addition, *Tipp City* is easily distinguished because it involved a sign code riddled with so many content-based provisions that nearly all provisions were unconstitutional on their face. Reminiscent of the later-decided *Reed*, Tipp City's sign code provided for twenty-four mostly content-based exemptions to permitting requirements. *Id*., 186 Ohio App. 3d at 566; *see also id*. at 500, 579 n.8. The City sign code also contained a dizzying array of design, size, and placement regulations, each of which contained *more* content-based exceptions. Unlike the Village, the City's code lacked any severability provision. *Id*., 929 N.E.3d at 505, 186 Ohio App.3d at 585. Confronted with the overwhelming number of content-based provisions, the trial court simply held that substantial parts of the sign code were facially unconstitutional – a ruling the City did not appeal.[22] *Id*., at 504, 186 Ohio App.3d at 584.

From the largely unconstitutional whole, the trial court salvaged discrete provisions that the court deemed to be content-neutral. That method resulted in "wholesale destruction" rather than "surgical severance" – the opposite of what courts typically strive to do. *See Norton*, 99 F.4th at 852. In other words, the trial court implied that the entire code was unconstitutional, but then "essentially 'severed in'" four provisions: (1) the definition of a sign, (2) a permit requirement for some signs; (3) a five-color limit; and (4) a size limit for wall signs. *See id*., 929 N.E.2d at 491, 186 Ohio App.3d at 568. The trial court's slash, burn, and rewrite approach was too much for the Ohio Court of Appeals. To begin with, the appellate court found three of the four preserved provisions were not content-neutral, further reducing the sign code to "a shell of itself" *Id.* Such large-scale

---

[22]The appellate court noted: "[I]t is not clear from the trial court's ruling whether it believed the entire sign ordinance to be unconstitutional except for the provisions it applied to the appellants' mural." *Tipp City*, 929 N.E.2d at 493 n.2, 186 Ohio App.3d at 571 n.2. However, Tipp City itself apparently understood the trial court's decision as such.

deletions could not be accomplished without eviscerating legislative intent beyond recognition. "[F]urther severing the sign ordinance to comply with our ruling would fundamentally disrupt the scheme for regulating signs, result in a hollow ordinance, and compel us to speculate at the preferences of Tipp City's city council." *Id.*, 929 N.E.2d at 505, 186 Ohio App.3d at 585, 2010-Ohio-1013, ¶ 67.

In the course of discussing scores of unconstitutional exceptions to the permit provision, *Tipp City* cited to *English*, reasoning that to sever so many provisions "would be to subject formerly exempt signs to a [new] permit requirement," which in turn "would extend an ordinance's reach beyond what [Tipp City] intended." *Id.*, 929 N.E.2d at 503, 186 Ohio App.3d at 583. Notwithstanding its citation to the *English* dictum, *Tipp City* stands for the unremarkable proposition that when facially unconstitutional provisions permeate nearly every provision of a sign code, cutting away all of the unconstitutional bits will not do, because nothing consistent with legislative intent will be left. Applying the controlling *Geiger* test would have yielded the same result.

In contrast to *Tipp City*, the case at hand involves a facial challenge to eight enumerated ordinances that have all been upheld as constitutional, but for a minor exemption located in the definition of "outdoor advertising sign." Surgical severance works because it is consistent with the Village's intent to regulate Expressway Advertising. Unlike in *Tipp City*, it is not overly speculative to conclude that the Village would have preferred to enact a sign code that regulates off-premises outdoor advertising signs, including the ban on off-premises variable message signs, rather than forego all such regulation if the public-service exemption could not stand.

### E.  The Impact of Severability on Standing

At this point, the undersigned considers the impact of severability on standing. This Court previously determined that Norton had standing to pursue its facial challenge to the foundational definition of an "outdoor advertising sign" in Chapter 711.02 because: (1) the Village's enforcement of Ch. 711.07(e) caused Norton an "actual injury"; and (2) if Norton's facial challenge to the definition were successful, it would "redress" Norton's injury by precluding enforcement of the variable message ban against "outdoor advertising signs." But if severability precludes *any* possibility of redress for Norton's actual injury, will standing still exist?

In *Lamar*, the trial court describes this issue as "the intersection of severability and redressability." *Id*., 677 F.Supp.3d at 689. There, the court held that the plaintiff lacked standing based on the availability of severance of the unconstitutional provisions.

> Lamar's standing to challenge [certain exemptions] …depends on whether those provisions may be severed from the ordinance. If they can be severed, and if the resulting ban on EMDS signs is constitutional, the plaintiff's claim[s]…fail for lack of standing.

*Lamar*, 677 F.Supp.3d at 690. Because severability allowed the ban on digital signs to stand and made it impossible for Lamar to obtain redress for its injury, the court held that the plaintiff lacked standing. In so holding, *Lamar* relied on an earlier summary of Sixth Circuit case law by a Michigan court:

> Courts in the Sixth Circuit have explained that the severability of allegedly unconstitutional sign ordinance provisions may establish that a plaintiff's claimed injury is not redressable. *See Prime-Site Media*, 2020 WL 2556782 at *11 ("If there is even one constitutional, severable provision of the 2019 Ordinance that Oak Park used (or could have used) to deny [plaintiff] its permit, finding any number of other provisions of the 2019 Ordinance unconstitutional would not redress [plaintiff's] injury."); *Midwest Media*, 503 F.3d at 465 (plaintiffs "lacked standing" because constitutional size and height requirements were severable from allegedly unconstitutional

provisions).

*Outdoor One Communications, LLC v. Charter Township of Genoa, Michigan*, No. 2:20-cv-12459-TGB-RSW, 2021 WL 4480165, at *8 (E.D. Mich. Sept. 30, 2021). Applying similar reasoning, the trial court in *GEFT Outdoor, LLC v. City of Evansville, Indiana*, 650 F.Supp.3d 660, 666-67 and n.1 (S.D. Ind. 2023) also held that the plaintiff was left without redress because the challenged exemptions could be severed, leaving the City's ban on digital billboards were unaffected and enforceable. *But see GEFT Outdoor, LLC v. City of Evansville, Indiana*, 110 F.4th at 938 (affirming the judgment but soundly rejecting the trial court's standing analysis[23] and holding instead that the plaintiff could not show the type of "substantial invalidity" required to win a facial constitutional challenge under the recent decision in *Moody v. NetChoice, LLC*, 601 U.S. 702, 144 S. Ct. 2383 (2024)).[24]

Norton contends that "severability has nothing to do with redressing a past injury." (Doc. 74, PageID 2275). *Lamar* refutes that contention. Nevertheless, the undersigned finds no cause to alter this Court's prior determination. Standing ordinarily is determined at the outset of litigation, and requires only a showing that an actual injury is "*likely* to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 578 U.S. 330, 338 (2016) (emphasis added, citations omitted). At the outset of litigation, the undersigned assumed that Norton's injury likely would be redressed *if* it prevailed on

---

[23]The Seventh Circuit's rejection of the trial court's standing analysis appears in conflict with the Sixth Circuit's greater focus on the interplay between severability and redressability. The suggestion that the invalidation of a *severable* part of an ordinance equates to redress or a remedy in plaintiff's favor is particularly at odds with the Sixth Circuit's opinion in this case, in which the appellate court held that the determination of a remedy is wholly dependent on severability.

[24]Published two months after remand in this case, *Moody v. NetChoice LLC* held that facial challenges under the First Amendment should be "hard to win," and that a constitutional law may be struck down in its entirety "only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.*, 603 U.S. 707, 723-724, 144 S. Ct. 2383, 2397. *Moody* adds support to the conclusion that severance is appropriate and that Norton cannot prevail.

its facial challenge to Ch. 711. That initial presumption remains valid, regardless of the final outcome of this lawsuit.[25]

### F. Chapter 711 Remains Constitutional

Norton argues that even if Ch. 711.02(a)(4) is subject to severance, this Court should still find Chapter 711 to be unconstitutional because it fails "strict scrutiny." But this Court previously found no merit to any of Norton's myriad constitutional challenges to the ordinances contained in Chapter 711, and that its content-neutral provisions are subject only to intermediate scrutiny. Apart from Ch. 711.02(a)(4), the Sixth Circuit agreed.

> On appeal, Norton makes no serious argument that Chapter 711's different treatment for on- versus off-premises signs calls for application of strict scrutiny. Nor could it. *Austin* plainly holds that a regulation that does nothing more than differentiate between on- and off-premises signs is content neutral, even if one must read the content of the sign to determine whether it is an on- or off-premises sign.

*Norton*, 99 F.4th at 848; *see also id.* ("The exemption for signs posted by a public authority plainly does not call for application of strict scrutiny.").

In the first R&R, the undersigned further reasoned that the on- and off-premises exemptions as well as the "public authority" exemption satisfied the intermediate scrutiny standard. (Doc. 51, at 20-27; *see also* Doc. 63 at 6-7). The Sixth Circuit technically never reached that issue, because it reversed on grounds that "[t]he public-service exemption operates to make Chapter 711 a content-based law subject to strict scrutiny." *Norton*, 99 F.4th at 851. After explaining that the whole of Chapter 711 *might* be rendered

---

[25]Some might argue that this Court should have required full briefing on the severability issues so that it might better assess redressability prior to its first entry of summary judgment. But to do so, after concluding that multiple challenged provisions were content-neutral, would have required extensive briefing on what had become purely hypothetical issues. Not only was severability irrelevant after the determination that Chapter 711 was content-neutral, but any severability analysis under *Geiger* would have required a great deal of speculation about how many (and which) provisions out of the many contested ordinances might be found to be unconstitutional if Norton were to succeed in any claim on appeal.

unconstitutional by the inclusion of a single unconstitutional exemption, the appellate court clarified that severance might allow "the remainder of Chapter 711 …to stand under *Austin*." *Norton*, 99 F.4th at 852. In lieu of fashioning any remedy, the court remanded the dispositive issue of severability to this Court.

The undersigned's conclusion that the facially invalid exemption is severable renews, in modified form, the ultimate question decided in the first R&R. Namely, after severance of the unconstitutional exemption, do the remaining content-neutral provisions of Chapter 711 still satisfy intermediate scrutiny?

Norton argues that Chapter 711 is still unconstitutional after severance, largely repeating arguments that the undersigned rejected in the prior R&R. However, Norton also expands on an argument that the Village's contracted zoning official, Gerald Stoker, has demonstrated an "impermissible purpose" in the way he has administered the sign code.[26] (*See* Doc. 74, PageID 2263). As the Sixth Circuit pointed out, some of Stoker's testimony "suggests … that the regulations may be content based by their nature of being speaker based" as administered. *See Norton*, 99 F.4th at 850 n.3. But closer review of Stoker's testimony finds no support for Norton's expanded argument that Stoker has impermissibly administered the *constitutional* portions of Chapter 711, including the content-neutral variable message ban.[27] Rather, the cited testimony relates to Stoker's interpretation of the content-based public-service exemption. (*See* Stoker Depo., Doc. 31, PageID 798-805).

---

[26]A version of this argument was presented by Norton in its first motion for summary judgment. (See Doc. 50 at PageID 1696-97).
[27]Norton has no remaining "as applied" claims relating to the Village's enforcement of Chapter 711 against Plaintiff in particular.

Having considered all relevant arguments, the undersigned finds no basis to alter her conclusion that all remaining provisions of Chapter 711 are constitutional under the intermediate scrutiny standard. The undersigned therefore fully incorporates this Court's prior analysis of the same. *See Norton*, R&R (Doc. 51 at 20-27), 2022 WL 2176339, at **11-14 and Order adopting R&R (Doc. 61), 2023 WL 4633895.

### G. The Question of Remedy

Norton filed this civil rights lawsuit under 42 U.S.C. § 1983, alleging that Defendants violated its civil rights by virtue of the enactment and enforcement of seventeen allegedly unconstitutional ordinances in Chapters 1185 and 711 of the Village of St. Bernard's Zoning Code. Norton established standing to challenge Chapter 711 provisions – but not Chapter 1185 provisions - because the Village cited Ch. 711.07(e) to deny Norton permission to display its variable message "outdoor advertising sign[s]." Through facial constitutional challenges to Chapter 711, Norton sought "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir.2009) (*en banc*).

Consistent with that aim, Norton sought a declaratory judgment that the Village's sign code as a whole is unconstitutional because of "content-based distinctions, regulations, and restrictions on free speech which cannot survive constitutional scrutiny," because its provisions are "vague, ambiguous, overbroad, and/or a violation of due process," because the ordinances act as a "prior restraint," and because the sign code denied Norton "equal protection of the law." (Doc. 1, ¶¶ A-E, PageID 38-39). The complaint specifically sought to invalidate the Village's variable message ban on outdoor advertising signs along with any fine or penalty for sign code violations. (*Id.*, ¶F-G, PageID

39). Norton further sought a declaration that the Village's attempts to revoke its permit(s) were "null and void." (*Id.*, ¶ H, PageID 40). In addition to requests for declaratory relief, Norton sought injunctive relief to preclude the Village from past and future attempts to enforce its sign code. (*Id.*, PageID 38-40). Last but not least, Norton sought compensatory damages "in excess of $25,000" based on the inability to display its variable message signs, pre- and post-judgment interest, attorney fees and costs, punitive damages, and any other legal and equitable relief to which it might be entitled. (*Id.*, PageID 40).

The Sixth Circuit's April 2024 decision remanding this case for consideration of the severability issue kept Norton's facial challenge to Chapter 711 alive, but only just. Only one small part of the definition of "outdoor advertising sign" in Ch. 711.02(a) is unconstitutional, and that discrete exemption is severable under *Geiger*. Apart from the unconstitutional-but-severable Ch. 711.02(a)(4), the remaining provisions of Chapter 711 are constitutional.

The Village is entitled to summary judgment on all claims because Norton was injured *solely* by virtue of the ban in Ch. 711.07(e). Norton has suffered no constitutional injury because, after severance, the Village may continue to constitutionally enforce its variable message ban against any "outdoor advertising sign." "Norton does not deny that its proposed sign falls into the definition of 'outdoor advertising sign' in Chapter 711," *see Norton*, 99 F.4th at 846, nor is it impacted by any exemption.[28]

---

[28]Norton briefly argues that it is possible to find that Norton suffered a compensable injury from the severable provision. See *Collins v. Yellen*, 594 U.S. 220, 259 (2021). But the type of hypothetical injury from a severed provision discussed in *Collins* has no application here. Contrast *Wagner v. City of Garfield Heights*, No. 1:11-cv-2173, 2013 WL 12099080 (granting injunctive relief where City sought to directly enforce the unconstitutional-but-severable provision against plaintiff), *aff'd, Wagner v. City of Garfield Heights*, 675 Fed. Appx. 599 (discussing why injunction involving severed provision provided redress).

Norton incorrectly asserts that the Sixth Circuit's April 2024 decision was tantamount to a final determination on the merits in its favor. (*See* Doc. 74, PageID 2276, "Norton became a prevailing party upon the Sixth Circuit's holding that the Village's Chapter 711 was unconstitutional."). Building on that false premise, Norton argues that it remains entitled to declaratory and injunctive relief as well as monetary damages, including attorney's fees, based on a "presumption of injury" from the alleged violation of Norton's First Amendment rights. (Doc. 74, PageID 2273). As Norton sees it:

> The Sixth Circuit's holding created an injunction, which this Court must carry out, on all of Chapter 711. Only upon a finding that (1) the unconstitutional provision is severable, and (2) the remaining portions of Chapter 711 pass constitutional scrutiny, can the Village apply any of the rest of Chapter 711. But it may still not apply the unconstitutional portions. This Court must issue injunctive and declaratory relief; the only question is the scope.

(Doc. 74, PageID 2276).

Norton is wrong. The Sixth Circuit's determination that the public-service signs exemption is unconstitutional was never a final determination on the merits, but merely a preliminary ruling that required this Court to further evaluate severability as a "next step" before considering the propriety of any remedy. The Sixth Circuit did not issue an injunction and did not direct this Court to do so. The appellate court expressly reserved ruling on whether Norton would prevail. To state the obvious, in order to be a "prevailing party," Norton must show that it ultimately prevailed on at least one claim in its complaint. Despite the Sixth Circuit's brief infusion of oxygen to one claim, ultimately it is the Village that has prevailed. This includes but is not limited to Norton's claims for declaratory and injunctive relief regarding the severable exemption for public-service signs in Ch.

711.02(a)(4), and Norton's corresponding claim for attorney's fees and costs under 42 U.S.C. § 1988.[29]

The analysis in *Lindenbaum v. Realgy, LLC*, 13 F.4th 524 (6th Cir. 2021) helps explain why severability is merely part of statutory interpretation, as opposed to the type of true "remedy" that redresses a party's injury, such as an injunction, declaratory judgment, or damages.

> After disregarding unconstitutional enactments, we … determine what (if anything) the statute means in their absence - what is now called "severability" analysis. *See Tilton v. Richardson*, 403 U.S. 672, 684, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971). But those steps are all part of explaining what the statute "has meant continuously since the date when it became law" and applying that meaning to the parties before us. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). Courts do not change statutes.
>
> Instead, as the Supreme Court has made clear in recognizing the power of judicial review, the Constitution itself displaces unconstitutional enactments: "a legislative act contrary to the constitution is not law" at all.

*Lindenbaum*, 13 F.4th at 528; *see also*, *id.* at 529 and at n.3 (discussing differences between a traditional judicial "remedy" and severability).

> Because unconstitutional enactments are not law at all, it follows that a court conducting severability analysis is interpreting what, if anything, the statute has meant from the start in the absence of the always-impermissible provision. … If severability were a remedy for violation of the federal constitution, then federal courts could do it without reference to state law; because it is interpretive, federal courts must apply the state's law of severability.

*Id.*,13 F.4th at 528-529 (citations omitted). Because Norton was not and is not impacted by the severable portion of Ch. 711.02(a), Plaintiff is entitled to no relief.

---

[29]A request for attorney's fees or costs is not a form of redress, but is "merely a 'byproduct' of a suit that already succeeded." *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 801, 592 U.S. 279, 292 (2021)

### III.    Conclusion and Recommendation

For the reasons stated, the undersigned again concludes that the provisions of the Village's sign code that Norton has standing to challenge are constitutionally valid under intermediate scrutiny review. Therefore, **IT IS RECOMMENDED THAT:**

1. Plaintiff's supplemental motion for summary judgment (Doc.74) be DENIED; and that

2. Defendants' motion for summary judgment (Doc. 76) be GRANTED in its entirety, with this case to be DISMISSED.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NORTON OUTDOOR ADVERTISING,
INC.,                                                        Case No. 1:20-cv-350

       Plaintiff,

                                       Barrett, J.
         v.                                           Bowman, M.J.

VILLAGE OF ST. BERNARD, OHIO, et al.,

       Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).