UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| NORTON OUTDOOR ADVERTISING, INC., <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF ST. BERNARD, et al., <br><br> Defendant. | Case No. 1:20-CV-350 <br><br> Judge Michael R. Barrett <br><br> **OPINION & ORDER** |

This matter is before the Court on the parties' supplemental motions for summary judgment, (Docs. 74; 76), and the Magistrate Judge's Report and Recommendation ("R&R") of January 23, 2025, (Doc. 81). Proper notice has been afforded to the parties under 28 U.S.C. § 636(b)(1)(C), including notice that they may forfeit rights on appeal if they failed to file objections to the R&R in a timely manner. *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Plaintiff Norton Outdoor Advertising, Inc., timely objects, (Doc. 84); for the following reasons the Court will overrule Norton's objections and adopt the recommendations of the Magistrate Judge in full.

I. **BACKGROUND**

A comprehensive factual and procedural background of this case can be found in the R&R, the Court's prior summary judgment opinion, (Doc. 63), and the Sixth Circuit decision granting limited remand, *Norton Outdoor Advert., Inc. v. Vill. of St. Bernard*, 99 F.4th 840 (6th Cir. 2024).

1

Relevant for the Court's purposes here is that the Village of St. Bernard is vested with the authority to govern land use within its boundaries. *See* Ohio Rev. Code § 713.03. St. Bernard regulates advertising signs under two sections of its Village Code—Part 7, the Business Regulation Code, and Part 11, the Planning and Zoning Code—and subcontracts its zoning authority to Defendant Gerald Stoker. At the time this action was initiated, St. Bernard required parties to obtain a permit before installing or erecting "any sign." Ordinances, Ch. 1185.002.

The Village Code distinguishes between "on-premises signs" (signs advertising or announcing content related to the premises where the sign is located) and "off-premises signs" (signs directing attention elsewhere). *Compare id.*, Ch. 1185.001(c) *with* Ch. 1185.001(d). Both "outdoor advertising signs" as described in Part 7 and "advertising signs" as described in Part 11 are defined as off-premises signs, *see id.*, Ch. 711.02, 1185.001, and St. Bernard generally applies stricter limitations to off-premises signs, including the prohibition of "variable messaging" (also known as "changeable messaging"), *id.*, Ch. 711.07(e). Notably, the Village Code provides exemptions for directional or traffic control signs posted by a public authority, real estate signs, and public service signs:

> (a) "Outdoor Advertising Sign" means any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the Interstate system or primary system in this Village, except:
> > (1) Signs primarily intended to promote the sale of goods, products, services, or events on the same premises as the sign; provided, however, "outdoor

2

> advertising sign" shall include any sign promoting the sale of goods, products, or services on the same premises as the sign but which are primarily intended to promote sale off premises.
> (2) Directional or traffic control signs posted by a public authority.
> (3) Signs advertising the sale or lease of property on which they are located.
> (4) Public service signs which disclose information such as time or weather, provided such signs are not used to advertise or promote goods, products, services, or events.

*Id.*, Ch. 711.02(a).

After Norton converted two of its existing signs to fourteen-by-forty-eight-foot digital LED signs with variable messaging, St. Bernard revoked the permits and issued notices of non-compliance.[1] Norton brought the underlying action alleging that St. Bernard's sign restrictions violate its First and Fourteenth Amendment rights, and the parties eventually cross-moved for summary judgment. Following supplemental briefing and a stay pending the resolution of *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61 (2022), the Magistrate Judge concluded, and the Court agreed, that "the provisions of the Village's sign code that Norton has standing to challenge are constitutionally valid under intermediate scrutiny review." Over Norton's objections, the Court granted summary judgment in favor of Defendants.

Norton timely appealed, "launch[ing] a barrage of attacks on the Village's sign regulations," *Norton*, 99 F.4th at 842, and arguing that "St. Bernard's billboard ordinances arbitrarily restrict communications based on the message, the speaker, and subject

---

[1] St. Bernard did, however, note that Norton could continue to use the signs until it obtained a variance, but only if it deactivated the changeable messaging feature during that time.

matter, and the content," Appellant Br. at 12. In an opinion issued on April 19, 2024, a panel of the Sixth Circuit observed that "much of the work of the work of Chapter 711 is accomplished in an entirely content-neutral way." *Id.* at 850. However, the panel also held that "[b]ecause the public-service-sign exemption is just that—an exemption—its operation means that the definition of outdoor advertising sign is also content based." *Id.* In other words, St. Bernard must inquire "whether the content displayed on an off-premises sign meets the criteria of the public-service exemption," which "cannot be done in a content-neutral fashion." *Id.*

The court ultimately held that "the public-service exemption operates to make Chapter 711 a content-based law subject to strict scrutiny," which St. Bernard could not satisfy. *Id.* at 851. But because "[t]he parties ha[d] not briefed on appeal whether the public-service-sign exemption is severable, such that the remainder of Chapter 711 could be left to stand under *Austin*," the court remanded the matter for the limited purpose of determining "whether the remainder of Chapter 711 can survive apart from its unconstitutional exemption." *Id.* at 852.

Following remand, the parties briefed the severability question by way of dueling supplemental motions for summary judgment. In an exhaustive R&R, the Magistrate Judge addressed the arguments and concluded that (1) the public service sign exemption is severable under Ohio law; (2) the remaining provisions that Norton has standing to challenge are constitutionally valid under intermediate scrutiny review; and (3) Norton is not entitled to an award of fees and costs. The Magistrate Judge recommended a grant of summary judgment in favor of Defendants, and Norton timely objected.

4

## II. SUMMARY JUDGMENT STANDARD

Magistrate Judges are authorized to decide both dispositive and non-dispositive matters pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. When objections are made to a Magistrate Judge's R&R on a dispositive matter, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is "material" only when its resolution affects the outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings, but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This standard of review remains the same for reviewing cross-motions for summary judgment. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021); *see Harris v. City of Saginaw*, 62 F.4th 1028, 1032-33 (6th Cir. 2023) ("In review of the *defendant's* motion, we accept

5

the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff*;" whereas "in review of the *plaintiff's* motion, we accept the *defendant's* view of the facts as true and draw all reasonable inferences in favor of the *defendant*.").

### III. ANALYSIS

#### a. Waiver

In its first objection, Norton argues that Defendants "waived the right to argue severability," and the Magistrate Judge erred in finding otherwise. As the Magistrate Judge summarized, "Norton argues that this Court should strike down Chapter 711 in its entirety without any consideration of severability on the merits." (Doc. 81, PageID 2450). But the Court is not persuaded by Norton, and adds that Norton does not advance its cause by appearing to question the Magistrate Judge's motivations or proclaiming, without support, that a related opinion by the Ohio First District Court of Appeals is "rife with legal and factual errors." (Doc. 84, PageID 2501).

Despite the voluminous and vigorous argument that Norton dedicates to this objection, the Magistrate Judge did not err. "The mandate rule binds a district court to the scope of the remand issued by the court of appeals." *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021). "Limited remands direct district courts to address specific issues, creating 'a narrow framework within which the district court must operate.'" *Continental Cas. Co. v. Indian Head Indus., Inc.*, 941 F3d 828, 834 (6th Cir. 2019) (quoting *United States v. Richardson*, 906 F.3d 417, 422 (6th Cir. 2018)); *cf. United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[T]his court does not remand issues to the district court when those issues have been waived or decided.").

The Sixth Circuit explicitly declared that "[s]everability . . . is a distinct legal issue in this case meriting further thought from the parties," and is thus best resolved before this Court in the first instance. *Norton*, 99 F.4th at 852. In other words, because "the federal courts have 'a decisive preference for surgical severance rather than wholesale destruction' of a statutory scheme," *id.* (quoting *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020)), the sole charge on remand was for the Court to consider whether the unconstitutional provision could be severed. Moreover, the Sixth Circuit directly acknowledged that Defendants reserved the right to present a severability analysis should it become a relevant consideration. *Id.*

### b. Severability

Norton's second objection takes issue with the Magistrate Judge's severability analysis, arguing that "the R&R's analysis of *Geiger* . . . ignores the plain language of the case and [a] century of case law in between." (Doc. 84, PageID 2502).

"In Ohio, 'statutory provisions are presumptively severable." *Cincinnati Women's Servs. v. Taft*, 468 F.3d 361, 371 (6th Cir. 2006) (quoting *Women's Med. Pro. Corp. v. Voinovich*, 130 F.3d 187, 202 (6th Cir. 1997)). As noted by the Magistrate Judge, the Ohio Supreme Court has long held that an unconstitutional provision can be "separated or severed, allowing related constitutional provisions to be interpreted in a manner that preserve[s] the constitutionality of the statute as a whole." (Doc. 80, PageID 2457). The controlling legal test asks three questions:

> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the

7

> constitutional part from the unconstitutional part, and to give effect to the former only?

*Geiger v. Geiger,* 160 N.E. 28, 33 (Ohio 1927) (citing *State v. Bickford*, 147 N.W. 407 (N.D. 1913)).

As to the first *Geiger* prong, Norton appears to concede that Chapter 711.02(a) can be read to stand by itself if the unconstitutional exemption for public service signs is removed entirely. Norton argues, though, that the Magistrate Judge ignored the plain language of *Geiger* because the unconstitutional exemption in Chapter 711.02(a)(4) is grammatically incomplete when read apart from the main language of Chapter 711.02(a), and thus cannot stand by itself. But despite criticizing the Magistrate Judge's legal reasoning, Norton presents no meaningful support for its own position. To the contrary, Norton recognizes that "[t]here is no question that many cases in Ohio have focused only on whether the constitutional provision can be read on its own." (Doc. 84, PageID 2502).

Indeed, grammatical correctness of a provision to be severed is not the primary concern in a severability analysis. "The point of the first prong of the *Geiger* test is to ensure that a court severs the invalid provision in its entirety rather than selectively deleting a few words from within it." *State v. Noling*, 75 N.E.3d 141, 159 (Ohio 2016) (O'Donnell, J., dissenting). The Sixth Circuit held that the fourth exemption in Chapter 711.02(a) is a content-based regulation that cannot withstand strict scrutiny. And because removal of that exemption still leaves a functional regulation that can be read on its own, the first *Geiger* prong is satisfied.

As to the second *Geiger* prong, Norton recognizes that Chapter 711.01 contains a clear expression of intent and further acknowledges that "[t]he intent of Chapter 711 was to create a comprehensive plan regarding billboards." (Doc. 84, PageID 2505). But Norton

8

proceeds to argue that the Magistrate Judge's "analysis makes little sense," in part because it relied on Chapter 711.01—titled "Intent"—and "gloss[ed] over statutorily demonstrated intent." (Doc. 84, PageID 2508). Adopting Norton's reasoning here would require the Court to ignore basic principles of statutory interpretation and put aside the strong preference for surgical severability, two things it will not do.

Equally unpersuasive is Norton's invitation to engage in pure speculation as to "what [will] happen once the public service exemption is removed" at the expense of considering plainly enunciated legislative intent. Simply put, the Magistrate Judge did not err in looking to St. Bernard's stated intent or inclusion of a severability clause, particularly because the presence of a severability clause "create[s] a presumption that [the Village] did not intend the statute's validity to hinge on any constitutionally infirm provision." *Déjà Vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 389 (6th Cir. 2001). Coupled with the "decisive preference for surgical severance rather than wholesale destruction of a statutory scheme," *Norton*, 99 F.4th at 852 (internal quotations omitted), the second *Geiger* prong is easily satisfied.

Finally, as to the third *Geiger* prong, severance does not require the insertion of additional language to separate the unconstitutional exemption or give effect to the remaining, constitutionally-sound provisions. Norton does not seriously or substantively contest the conclusion that "[n]o words are required to be added to sever Ch. 711.02(a)(4) from the remainder of Ch. 711.02(a)." (Doc. 81, PageID 2467). As a result, the third *Geiger* prong is satisfied and "the remainder of Chapter 711 [can] be left to stand." *Norton*, 99 F.4th at 852.

9

### c. Standing

Norton concedes that the Magistrate Judge's conclusion regarding standing "is not in error," but curiously still sees fit to contest "certain of the R&R's holdings within this section." (Doc. 84, PageID 2518). Especially in light of the Sixth Circuit's determination that "Norton has forfeited its challenge to the district court's standing findings," the Court declines to comment further on an objection that does not even purport to challenge the Magistrate Judge's conclusion. *Norton*, 99 F.4th at 844.

### d. Constitutionality of Remaining Provisions

Norton's fourth objection includes a puzzling assertion that the remainder of Chapter 711 must be struck down because it fails to pass constitutional muster under the microscope of strict scrutiny. As the Sixth Circuit noted, despite Norton's "barrage of attacks on the Village's sign regulations," the first three exemptions of Chapter 711.02(a) *do not* "call for the application of strict scrutiny." *Id.* at 848. Rather, strict scrutiny was only invited here due to the content-based nature of the fourth exemption. And because the remaining exemptions are content-neutral, the Court need only apply intermediate scrutiny.

Norton nevertheless argues in its motion for summary judgment that "[r]egardless of whether strict or intermediate scrutiny is applied, Chapter 711 cannot pass constitutional muster under either." (Doc. 74, PageID 2266). Apart from repeating other arguments that the Court has already rejected, Norton asserts that "although what remains of Chapter 711 after severance might be considered facially content neutral, it is beyond dispute that the administration of Chapter 711 is content based in every instance because of the impermissible purpose of justification used by the Village in issuing or

10

denying permits under Chapter 711." (*Id.*, PageID 2265). But a review of the testimony in question confirms the Magistrate Judge's conclusion that there is "no support for Norton's argument that Stoker has impermissibly administered the *constitutional* portions of Chapter 711, including the content-neutral variable message ban." (Doc. 81, PageID 2475).

### e. Remedies and Prevailing Party Status

Norton's final objections present the argument that the Magistrate Judge "erred in ignoring the basic analysis that renders Norton a prevailing party and provides for damages as well as injunctive relief." (Doc. 84, PageID 2526). Among other things, Norton asserts that the Sixth Circuit's opinion was a final decision on the merits, and "the entirety of Chapter 711 has been found unconstitutional under strict scrutiny by the Sixth Circuit." (*Id.*, PageID 2527-28). But Norton can only put forth inapposite case law and misrepresentations to support its positions. The reality is far simpler; as the Magistrate Judge summarized:

> Norton filed this civil rights lawsuit under 42 U.S.C. § 1983, alleging that Defendants violated its civil rights by virtue of the enactment and enforcement of seventeen allegedly unconstitutional ordinances in Chapters 1185 and 711 of the Village of St. Bernard's Zoning Code. Norton established standing to challenge Chapter 711 provisions – but not Chapter 1185 provisions - because the Village cited Ch. 711.07(e) to deny Norton permission to display its variable message "outdoor advertising sign[s]." Through facial constitutional challenges to Chapter 711, Norton sought "to invalidate the law in each of its applications, to take the law off the books completely."
>
> Consistent with that aim, Norton sought a declaratory judgment that the Village's sign code as a whole is unconstitutional because of "content-based distinctions, regulations, and restrictions on free speech which cannot survive constitutional scrutiny," because its provisions are "vague, ambiguous, overbroad, and/or a violation of

11

> due process," because the ordinances act as a "prior restraint," and because the sign code denied Norton "equal protection of the law." The complaint specifically sought to invalidate the Village's variable message ban on outdoor advertising signs along with any fine or penalty for sign code violations. Norton further sought a declaration that the Village's attempts to revoke its permit(s) were "null and void." In addition to requests for declaratory relief, Norton sought injunctive relief to preclude the Village from past and future attempts to enforce its sign code. Last but not least, Norton sought compensatory damages "in excess of $25,000" based on the inability to display its variable message signs, pre- and post-judgment interest, attorney fees and costs, punitive damages, and any other legal and equitable relief to which it might be entitled.

(Doc. 81, PageID 2476-77) (internal citations omitted).

Norton failed to prevail on a single one of its claims. It did not obtain a judgment declaring that the sign code is unconstitutional as a whole, it did not obtain injunctive relief preventing St. Bernard from enforcing its sign code, and its suit did not lead to the invalidation of the sign code in each of its applications. In the end, Norton was not injured by the application or enforcement of Chapter 711.02(a)(4) (a provision now severed), and its challenge to Chapter 711.07(e) was unsuccessful. Consequently, Norton cannot obtain relief or attorney's fees, and Defendants are entitled to summary judgment in their favor.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Norton's objections, (Doc. 84), are **OVERRULED**, and the R&R, (Doc. 81), is **ADOPTED**. Defendants' supplemental motion for summary judgment, (Doc. 76), is **GRANTED**; Norton's supplemental motion for summary judgment, (Doc. 74), is **DENIED**; and this matter is **DISMISSED**.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                             Michael R. Barrett
                                             United States District Judge